### PEOPLE *v.* ZERILLO.

1. CONSTITUTIONAL LAW—CRIMINAL LAW—FIREARMS—POSSESSION OF FIREARMS.

> While the legislature has power, in the most comprehensive manner, to regulate the carrying and use of firearms, it has no power to constitute it a crime for a person, alien or citizen, to possess a revolver for the legitimate defense of himself and his property, said right

The question of constitutional right to bear arms is discussed in notes in 3 L. R. A. (N. S.) 168; 20 L. R. A. (N. S.) 1007; 36 L. R. A. (N. S.) 115; L. R. A. 1917C, 63.

being expressly granted by section 5, art. 2, of the State Constitution, to every person.

2. SAME—CONSTITUTIONAL RIGHT MAY NOT BE MADE SUBJECT TO WILL OF SHERIFF.

The exercise of a right guaranteed by the Constitution may not be made subject to the will of the sheriff.

3. SAME—CRIMINAL LAW—FOREIGNERS—FIREARMS—REGULATION — CONFISCATION.

That part of Act No. 14, Pub. Acts 1921, making it a crime for an unnaturalized foreign-born resident of the State to possess a revolver unless permitted to have one by the sheriff of the county where he resides, is *held*, to be confiscatory rather than regulatory, and therefore void.

4. SAME—GAME—LEGISLATURE MAY PROTECT—POSSESSION OF FIRE-ARMS.

Game being property of the State, the legislature may enact laws for its protection, but, under the guise of protection of game, may not disarm any class falling within the constitutional guaranty.

5. SAME—STATUTES—CONSTRUCTION.

It is the duty of the courts, if possible, to so construe a statute as to make it harmonize with constitutional provisions.

6. SAME—CRIMINAL LAW—PROTECTION OF GAME—RIGHT TO POSSESS FIREARMS—FOREIGNERS.

Act No. 14, Pub. Acts 1921, construed, and *held*, to be valid in so far as it prohibits the use of firearms by unnaturalized foreign-born residents in hunting, capturing, or killing any wild bird or animal, either game or otherwise, of any description, except in defense of person or property; but void in so far as it makes it a crime for said class of residents to possess a revolver for the legitimate defense of their persons and property.

Exceptions before judgment from recorder's court of Detroit; Marsh (Pliny W.), J.   Submitted January 18, 1922.   (Docket No. 183.)   Decided October 2, 1922.

James Zerillo was convicted of possessing a revolver

in violation of Act No. 14, Pub. Acts 1921.   Reversed, and defendant discharged.

*Speed, Ring & Kelly, McClear, Stein & Sarbough* and *J. Richard Newman,* for appellant.

*Merlin Wiley,* Attorney General, *Paul W. Voorhies,* Prosecuting Attorney, and *Robert M. Toms,* Assistant Prosecuting Attorney, for the people.

WIEST, J.    Defendant, an unnaturalized, foreign-born resident, was convicted under a complaint charging him with possessing a revolver without a permit granted by the sheriff, contrary to Act No. 14, Pub. Acts 1921, and he brings the case here for review on exceptions before sentence. · It was made to appear in evidence that, about 5 o'clock in the morning of the 25th day of September, 1921, at the corner of Chase and Russell streets in the city of Detroit, defendant was seated at the wheel of a Marmon touring car with four or five men in the car with shotguns. Defendant had no shotgun but in the pocket of the door of the automobile was found a 38-caliber revolver and this is the firearm, the possession of which led to his conviction.    The complaint was laid under the game law, but did not charge the defendant with hunting for or capturing or killing any wild bird or animal, or intending to do so.

Does the game law make it unlawful for an unnaturalized, foreign-born resident of the State to possess a revolver?    The act mentioned makes it a misdemeanor for an unnaturalized, foreign-born resident to hunt for or capture or kill any wild bird or animal, either game or otherwise, of any description, excepting in defense of his person or property, "and to that end," such a person shall not own or be possessed of a shotgun or rifle of any make or a pistol or firearms of any kind.    The act provides that, on the

recommendation of two citizens, the sheriff of the county upon a showing of necessity may issue a permit to an unnaturalized, foreign-born resident to possess firearms. Defendant insists that the act, so far as it deprives him of the right to possess a revolver for a legitimate purpose, is in conflict with the provisions of the Constitution of the State and, therefore, void.

The Constitution of this State, article 2, section 5, provides:

"Every person has a right to bear arms for the defense of himself and the State."

The true meaning of this provision is well stated in the Constitution of the State of Colorado (art. 2, § 13):

"That the right of no person to keep and bear arms in defense of his home, person or property, or in aid of the civil power when thereto legally summoned, shall be called in question; but nothing herein contained shall be construed to justify the practice of carrying concealed weapons."

There should be added to this, however, the right of the legislature, under the police power, to regulate the carrying of firearms.

Firearms serve the people of this country a useful purpose wholly aside from hunting, and under a Constitution like ours, granting to aliens who are *bona fide* residents of the State the same rights in respect to the possession, enjoyment and inheritance of property as native-born citizens, and to every *person* the right to bear arms for the defense of himself and the State, while the legislature has power in the most comprehensive manner to regulate the carrying and use of firearms, that body has no power to constitute it a crime for a person, alien or citizen, to possess a revolver for the legitimate defense of himself and his property.

The provisions in the Constitution granting the right to all persons to bear arms is a limitation upon the power of the legislature to enact any law to the contrary. The exercise of a right guaranteed by the Constitution cannot be made subject to the will of the sheriff. The part of the act under which the prosecution was planted is not one of regulation but is one of prohibition and confiscation. It is not regulation to make it a crime for an unnaturalized foreign-born resident of the State to possess a revolver, unless permitted to have one by the sheriff of the county where he resides.

Game being property of the State, the legislature may enact laws for its protection, but, under the guise of protection of game, may not disarm any class falling within the constitutional guaranty of the right to bear arms in defense of themselves. The guaranty of the right to every person to bear arms in defense of himself means the right to possess arms for legitimate use in defense of himself, and necessarily includes the right to defend therewith, by lawful means, his property.

The provision of the act permitting an unnaturalized, foreign-born resident to hunt for, capture or kill any wild bird or animal in defense of his person or property cannot be made to work out if the law is construed to make it a crime for such a person to possess a firearm, but can be made to function if the act is construed to make it a crime for such a person to possess a firearm for the purpose of hunting, capturing or killing any wild animal, either game or otherwise, of any description, excepting in defense of his person or property.

Must an alien owner of a farm sit with folded arms and watch henhawks steal his chickens? No, the act permits him to kill noxious birds and animals, when necessary, in defense of his person or property.

But what is he going to use for that purpose? Until the occasion arises, if this statute is given the construction contended for by the people, it is a crime for him to possess a firearm, and he, therefore, cannot be prepared to exercise the leave granted without committing a crime. Woodchucks could burrow in his yard and meadows with impunity, owls rob his hen roost, rats run about his feet at chore time, and in some sections of the State, wolves could sit on his very door step, and howl defiance. Even the predatory skunk, in the open season, would be more offensively armed than the unnaturalized farmer faring forth to drive it away. Must such a farmer whistle off the dog discovered in the act of killing his sheep? Another statute gives him the right to kill such a dog discovered in the act. Must he request the burglar to come unarmed because he has been unarmed by the law? This act, if construed as contended for by the people, is so sharp shod as to calk itself.

The right to kill noxious birds and animals in defense of person or property would be but a joke if the means of exercising the right are taken away by the general prohibition against possessing any firearms.

If it is a crime for an alien to possess a revolver what meaning shall be accorded section 3 of the act, which provides:

"That the possession of a shotgun, or rifle, or pistol, or firearm of any kind, at any place outside of buildings within this State by an unnaturalized, foreign-born resident, shall be conclusive proof of a violation of the provision of section one of this act." * * *

Is this to be considered merely a rule of proof? Proof of what? Proof of intent to hunt, or proof of possession of prohibited weapons? If the alien is in possession of a revolver, and it is a violation of the law for him to have one at all, there is no

sense in declaring his possession of a revolver outside of buildings conclusive proof of a violation of the provisions of section 1 of the act, but there is some sense in making it proof of a purpose to hunt therewith, although it might be hard to convince a real hunter that a revolver is a hunting arm.

At the same session of the legislature, and in another and a later act, relative to protection of game (Act No. 117, Pub. Acts 1921), it is provided:

"No person, while in an automobile, shall carry a gun or other fire-arm, except a pistol or revolver, unless the same be unloaded."

Shall unnaturalized owners of automobiles be held guilty under one game law for exercising a right under another game law? It would be absurd to so hold and no such holding is necessary if the game law is kept to its true purpose. It is our duty, if possible, to so construe the act in question as to make it harmonize with constitutional provisions.

The people rely upon the case of *Commonwealth* v. *Patsone*, 231 Pa. 46 (79 Atl. 928), affirmed *Patsone* v. *Pennsylvania*, 232 U. S. 144 (34 Sup. Ct. 281). We have examined that case and find the game law there involved did not include revolvers and pistols and the supreme court of the State of Pennsylvania was careful to state:

"This prohibition against having deadly and long-range firearms does not in any way deprive the alien of property without due process of law, but simply defines and limits his right to use firearms, by restricting such right to the use of short-range firearms,— revolvers, and pistols, and such other weapons, as may be necessary for defense of his person and property."

Mention of the same thing is to be found in the opinion of the Supreme Court of the United States.

219—Mich.—41.

The relevant provision of the constitution of the State of Pennsylvania reads as follows:

"The right of citizens to bear arms in defense of themselves and the State shall not be questioned."

It will be noticed that our Constitution is inclusive of the right of *every person* to bear arms for the defense of himself and the State, and not merely citizens, as in the State of Pennsylvania.

The part of the act making it a crime for an unnaturalized, foreign-born resident to possess a revolver, unless so permitted by the sheriff, contravenes the guaranty of such right in the Constitution of the State and is void. The statute must be construed in accord with the provisions of our Constitution and it may stand as an act prohibiting the use of firearms by unnaturalized, foreign-born residents in hunting or capturing or killing any wild bird or animal, either game or otherwise, of any description, excepting in defense of person or property, but, so far as it makes it a crime for unnaturalized residents to possess a revolver for the legitimate defense of their persons and property, it is void.

Under the complaint and warrant and the evidence the defendant should have been adjudged not guilty.

The conviction is set aside, and defendant is discharged.

FELLOWS, C. J., and CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.

The late Justice STONE took no part in this decision.