The STATE of Utah, Plaintiff and Respondent,

v.

Frank VLACIL, Defendant and Appellant.

No. 16863.

Supreme Court of Utah.

April 14, 1982.

D. Gilbert Athay, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Craig L. Barlow, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

1. In violation of U.C.A., 1953, 76–10–503.

HALL, Chief Justice:

Defendant appeals his conviction of possession of a dangerous weapon by a person who is not a citizen of the United States.[1]

The facts leading up to defendant's arrest commenced at the Eagle's Club in Price, Utah. Nonmembers are allowed three visits to the private club; thereafter, a nonmember is not allowed in the club unless a commitment to join is made. Defendant, a Czechoslovakian national, was not a member of the club and had visited it on at least three occasions. At about 8:00 p. m. on February 21, 1979, defendant was again present in the club with one Hykl when several other acquaintances of defendant, including James (Rocky) Cruz, arrived. Shortly thereafter, defendant and Cruz became embroiled in an argument concerning the club's membership policy and defendant's status as a nonmember. Ultimately, defendant was forcibly ejected from the club.

At approximately 1:00 a. m., Cruz and the others left the club and proceeded to Rocky Ann's, a bar owned jointly by Cruz and Ann Archibald. Between 1:15 and 1:30, a bullet was fired from outside, through a window of the bar. Patrons at the bar looked outside and saw defendant holding an automatic weapon which they referred to as a "burp gun." Cruz went outside to talk with defendant. As Cruz approached, defendant said, "Stay away or I'll kill you." Cruz proceeded toward defendant but withdrew several feet when defendant "rammed the barrel" of the gun in Cruz's face. At that point, defendant fired the gun, shooting Cruz in the shoulder. Defendant and Hykl departed in defendant's van.

At about 2:00 a. m. on February 22, 1979, the Price City Police Department received a call for assistance and proceeded to the trailer park where defendant's van was parked. Defendant and Hykl (who were sitting in the van) were ordered to exit the van and to lie on the ground. One officer went to the van and removed therefrom a gun later identified as the weapon defend-

ant had used. Defendant was arrested and charged with possession of a dangerous weapon. The case was tried to a jury which found defendant to be guilty as charged. The court thereafter sentenced defendant to an indeterminate term not to exceed five years. Defendant appeals.

U.C.A., 1953, 76–10–503(1) provides, in pertinent part, as follows:

Any person who is not a citizen of the United States ... shall not own or have in his possession or under his custody or control any dangerous weapon as defined in this part. Any person who violates this section is guilty of a class A misdemeanor, and if the dangerous weapon is a firearm or sawed-off shotgun he shall be guilty of a felony of the third degree.

■ It is undisputed that defendant is "not a citizen of the United States" and that at the time of his arrest he was in possession of a firearm. This appeal challenges the statute as being facially unconstitutional because (1) it prohibits aliens from possessing firearms for their defense and security, and (2) it is an improper exercise of the police power inasmuch as the regulation is aimed at an area of the law which has been preempted by the federal government.

In support of his first argument, defendant contends that the statute violates his constitutionally protected right to bear arms.[2]

The Second Amendment to the Constitution of the United States provides as follows:

A well-regulated Militia, being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed.

In *United States v. Miller*,[3] the United States Supreme Court examined the historical foundation of the Second Amendment wherein it stated as follows:

The Constitution as originally adopted granted to the Congress power—"To provide for calling forth the Militia to execute the Laws of the Union ...; To provide for organizing, arming, and disciplining, the Militia, and for governing such Part of them as may be employed in the Service of the United States, reserving to the States respectively, the Appointment of the Officers, and the Authority of training the Militia according to the discipline prescribed by Congress." With obvious purpose to assure the continuation and render possible the effectiveness of such forces the declaration and guarantee of the Second Amendment were made. It must be interpreted and applied with that end in view.[4]

The right to bear arms under the federal Constitution is therefore collective rather than individual.[5] The matter was stated as follows in *Stevens v. United States*:[6]

Since the Second Amendment right "to keep and bear Arms" applies only to the right of the State to maintain a militia and not to the individual's right to bear arms, there can be no serious claim to any express constitutional right of an individual to possess a firearm.

An individual's right to bear arms is subject to the police power of the various states.[7] As stated in *Hardison v. State*:[8]

**2.** Defendant claims that he has a right to bear arms in order to defend himself. Inasmuch as the element of self-defense is not present in the instant case, we do not address that narrow issue, focusing rather on the *facial* constitutionality of the statute.

**3.** 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206 (1939).

**4.** *Id.* at p. 178, 59 S.Ct. at p. 818.

**5.** *United States v. Warin*, 530 F.2d 103 (6th Cir. 1976), cert. den. 426 U.S. 948, 96 S.Ct. 3168, 49 L.Ed.2d 1185 (1976).

**6.** 440 F.2d 144, 149 (6th Cir. 1971).

**7.** The Tenth Amendment to the Constitution of the United States reserves to the states all powers not delegated to the United States, nor prohibited by it to the states.

**8.** 84 Nev. 125, 129, 437 P.2d 868, 871 (1968); see also, *People v. Garcia*, 197 Colo. 550, 595 P.2d 228 (1979).

[T]he Second Amendment right is not absolute. The provision only applies to the federal government and absent federal or state constitutional restraints the authority to regulate weapons comes from a state's police powers. This is a valid subject for state regulation.

This Court has previously held that the statute under which defendant was convicted is a proper exercise of police power by the state. In *State v. Beorchia*,[9] the Court addressed an equal protection attack on the statute and held as follows:

The sale, use and possession of firearms are proper subjects of regulation by the State. The Fourteenth Amendment is not generally applied so as to restrict exercise of the police powers of the State. The statute under consideration was directed toward the safeguarding of the public peace and security and is thus a proper exercise of the police powers. [Citing *Ex Parte Rameriz*, 193 Cal. 633, 226 P. 914, 34 A.L.R. 51; *Patsone v. Pennsylvania*, 232 U.S. 138, 34 S.Ct. 281, 58 L.Ed. 539; Anno. 24 A.L.R. 1119; 3 Am.Jur.2d, Aliens & Citizens, Sec. 41, p. 890.] It appears that the legislature determined that possession of firearms by aliens was harmful, and we do not quarrel with the decision of that body.[10]

Defendant also contends that by prohibiting possession of firearms by aliens, the legislature has violated the provisions of our own Constitution. Article I, Section 6 of the Utah Constitution reads as follows:

The people have the right to bear arms for their security and defense, but the Legislature may regulate the exercise of this right by law.

Defendant contends that although the legislature can *regulate* the right to bear arms,

it cannot *prohibit* the possession of firearms by a class for any purpose.

This Court also addressed this argument in *State v. Beorchia*, wherein it was squarely held that "[i]t is quite evident from the language above set forth [Article I, Section 6] that the Legislature had sufficient power to enact the statute in question." That case is therefore dispositive and defendant's attempt to discredit the reasoning thereof is without merit.[11]

■ Defendant's second argument on appeal is that the statute is invalid inasmuch as the regulation of aliens is uniquely within the power of the federal government. Defendant cites several cases to the effect that the federal government has preempted the field of immigration, naturalization, and regulation of aliens.[12]

In *Florida Avocado Growers v. Paul*,[13] the United States Supreme Court enumerated the following standards to determine whether state regulations are preempted by federal legislation: (1) A state regulation is preempted where an unambiguous congressional mandate exists to that effect; (2) preemption exists where the state regulation cannot be enforced without impairing federal superintendence of the field; and (3) preemption of the state regulation exists where it stands as an obstacle to the accomplishment and execution of the full purposes of Congress.

Defendant relies upon Title 18 U.S.C. Appendix §§ 1201 through 1203 as federal legislation preempting the field. Said statute prohibits the receipt, possession, or transportation of firearms by aliens who are illegally in the United States and establishes penalties for violation thereof. The statute contains no unambiguous mandate to

---

**9.** Utah, 530 P.2d 813 (1974).

**10.** *Id.* at pp. 814, 815.

**11.** Defendant claims that the cases relied upon in *Beorchia* are distinguishable inasmuch as they do not involve statutes comparable to our own. As pointed out by the State, these cases were cited not in support of the "right to bear arms" argument, but the "police power" argument, discussed *supra.*

**12.** See, e.g., *Allen-Bradley Local v. Board*, 315 U.S. 740, 62 S.Ct. 820, 86 L.Ed. 1154 (1942); *Hines v. Davidowitz*, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941).

**13.** 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963).

preclude a state from regulating the possession of firearms by aliens. Although the statutes have similar objectives, the Utah statute in no way impairs enforcement of federal law. Neither does the state statute stand as an obstacle to the broader federal purposes in the areas of immigration and naturalization.[14] Consequently, under any of the above-stated standards, the regulation of possession, custody and control of "dangerous weapons" by aliens has not been exclusively federally preempted.

The statute constitutes an appropriate exercise of the police power and thus does not infringe upon constitutional prohibitions.

Affirmed.

J. ALLAN CROCKETT, Retired Justice, concurs.

OAKS, Justice (concurring):

I concur in the affirmance of this conviction. I join in the second portion of Chief Justice Hall's opinion, which rejects defendant's second argument (that the statute is facially invalid because of preemption). As to defendant's first argument (violation of his constitutional right to bear arms), I state separately my reasons for concurring in the conclusion that U.C.A., 1953, § 76–10–503(1) has not been shown to be unconstitutional as applied to defendant in the circumstances of this case.

Section 76–10–503(1) clearly applies to the facts of this case. However, there are four constitutional provisions on which a challenge to the application of that statute might possibly be based: the Second and Fourteenth Amendments to the United States Constitution, and Article I, §§ 6 and 24 of the Utah Constitution.

Defendant has not relied on the Second Amendment. It is therefore inadvisable to discuss that amendment in this case, especially when its applicability to state regulation is doubtful at best.[1]

Neither has defendant contended that § 76–10–503(1) impermissibly discriminates against aliens in violation either of the equal protection clause of the Fourteenth Amendment to the United States Constitution or of Article I, § 24 of the Utah Constitution, guaranteeing the "uniform operation" of "[a]ll laws of a general nature." At least as to the federal claim, this Court has rejected such a contention in State v. Beorchia, Utah, 530 P.2d 813 (1974). If that question is to be re-examined in light of recent holdings, it ought to be in a case where the issue is fully briefed and argued, not omitted entirely as in this case.

Defendant's constitutional challenge is based entirely upon Utah's right to bear arms provision, Utah Constitution, Art. I, § 6, quoted in the Chief Justice's opinion. Relying solely on People v. Zerillo, 219 Mich. 635, 189 N.W. 927, 24 A.L.R. 1115 (1922), defendant argues that under our

**14.** In DeCanas v. Bica, 424 U.S. 351, 355, 96 S.Ct. 933, 936, 47 L.Ed.2d 43 (1976), the United States Supreme Court stated that "the Court has never held that every state enactment which in any way deals with aliens is a regulation of immigration and thus per se preempted by this constitutional power, whether latent or exercised .... Standing alone, the fact that aliens are the subject of a state statute does not render it a regulation of immigration, which is essentially a determination of who should or should not be admitted into the country, and the conditions under which a legal entrant may remain."

**1.** The weight of authority holds than an individual's Second Amendment right to bear arms is guaranteed only against federal, not state, encroachment. Presser v. Illinois, 116 U.S. 252, 6 S.Ct. 580, 29 L.Ed. 615 (1886); United States v.

Cruikshank, 92 U.S. 542, 23 L.Ed. 588 (1876); Commonwealth v. Davis, 369 Mass. 886, 343 N.E.2d 847 (1976); Harris v. State, 83 Nev. 404, 432 P.2d 929 (1967); Burton v. Sills, 53 N.J. 86, 248 A.2d 521, 28 A.L.R.3d 829 (1968), appeal dismissed for want of substantial federal question, 394 U.S. 812, 89 S.Ct. 1486, 22 L.Ed.2d 748 (1969); J. Nowak, Constitutional Law 414 (1978). In view of those authorities, any comments about the meaning of the Second Amendment in this case are obiter dictum.

Although it is possible that the Second Amendment may yet be held to apply to state regulation in some manner, Comment, "The Impact of State Constitutional Right to Bear Arms Provisions on State Gun Control Legislation," 38 U.Chi.L.Rev. 185 (1970), it is unwise to address that complicated issue in a case where it has not been fully briefed.

constitutional provision the Legislature has no power to prohibit an alien from possessing firearms for the legitimate defense of himself and his property. Since § 76–10–503(1) has no such exception, it is said to be unconstitutional.

Whatever the merit of this defense, it is not at issue in this case. The question of whether an alien might lawfully possess a weapon in this state for his own protection is not before us. Defendant has no standing to litigate an alien's constitutional right to peaceful possession of a firearm.

As a general rule, a litigant to whom a statute is constitutionally applied lacks standing to make a general attack on the statute on the ground that its application to others or in some other hypothetical situation would contravene the Constitution. *Greaves v. State*, Utah, 528 P.2d 805, 808 (1974); *County Court of Ulster County v. Allen*, 442 U.S. 140, 155, 99 S.Ct. 2213, 2223, 60 L.Ed.2d 777 (1979); *Broadrick v. Oklahoma*, 413 U.S. 601, 610, 93 S.Ct. 2908, 2914, 37 L.Ed.2d 830 (1973) (and cases cited); 16 *Am.Jur.2d* "Constitutional Law" § 191.[2] A defendant can properly raise a constitutional defense in a criminal case "only if he is himself adversely affected thereby in violation of his own constitutional rights." *Greaves v. State*, 528 P.2d at 808. That principle of standing, which implements the sound and essential policy of judicial restraint, applies in this case.

This is not a case like *People v. Zerillo, supra*, which reversed the conviction of an alien in apparently peaceful possession of a gun because of a state constitutional guarantee—similar to Utah's—of the "right to bear arms for the defense of himself and the state." The court reasoned that because of that provision the legislature had no power "to constitute it a crime for a person, alien or citizen, to possess a revolver for the legitimate defense of himself and his property." 219 Mich. at 638, 189 N.W. at 928, 24 A.L.R. at 1117. As a corollary, a

general prohibition against possessing firearms could not validly make it a crime for an alien to possess a weapon in preparation for its use for the protected defensive purpose. In view of these constitutional principles, the prosecution in *Zerillo* apparently had to prove that defendant's possession was for a forbidden purpose, such as to hunt in violation of the game laws involved in that case. Because that proof was lacking, Zerillo's conviction was set aside.

The *Zerillo* precedent does not benefit the defendant in this case because here the uncontested evidence showed that his possession of a weapon was not the type of possession safeguarded by Article I, § 6. All of the evidence of possession in this case, which was uncontested, concerned defendant's possession of the "burp gun" during a period of approximately 45 minutes immediately before, during, and immediately after he used it for offensive purposes, to shoot the unarmed Cruz outside the bar.

The defendant had no standing to challenge § 76–10–503(1) on the ground that its application to persons possessing firearms "for their security and defense" would violate Art. I, § 6 of the Utah Constitution, because the possession for which he was convicted was shown to be for purposes other than his own "security and defense." Defendant's constitutional rights are not being violated by applying § 76–10–503(1) to him on the facts of this case. *Greaves v. State, supra.*

The law of standing is not subject to being superseded on the basis of the merit of the claimant's argument of unconstitutionality. "[S]tanding is not measured by the intensity of the litigant's interest or the fervor of his advocacy." *Valley Forge Christian College v. Americans United for Separation of Church and State,* —— U.S. ——, ——, 102 S.Ct. 752, 765, 70 L.Ed.2d 700 (1982). And the facts pertinent to standing to raise a constitutional defense are not "irrelevant."

---

**2.** An exception is recognized where overbroad statutes may inhibit activity protected by the First Amendment. This exception, founded on "the overriding interest in removing illegal deterrents to the exercise of the right of free speech," *County Court of Ulster County v. Allen*, 442 U.S. at 155, 99 S.Ct. at 2223, has no application to the facts of this case.

Here there was ample evidence of possession of a dangerous weapon by a person who was not a citizen of the United States, in violation of the express terms of § 76–10–503(1). That evidence was sufficient for a valid jury verdict of conviction, unless that statute is unconstitutional on its face—a contention not made here as to defendant's first argument—or unless that statute is unconstitutional as applied to this defendant on the facts of this case. Since the uncontested facts of this case show that defendant had no standing to raise the latter defense, I concur in affirming his conviction.[3]

J. ALLAN CROCKETT, Retired Justice, also concurs in the concurring opinion of OAKS, J.

STEWART, Justice (concurring in result):

It is conceded by all that the State has the power under Article I, § 6 of the Utah Constitution to enact reasonable regulations for the control of firearms. The issue is whether the State may discriminate between citizens and noncitizens. The constitutionality of U.C.A., 1953, § 76–10–503 is sustained basically because of the supposed *manner of use* to which the defendant put the weapon. The plurality opinion intimates that if an alien used a weapon in self-defense that might pass muster. However, the flat statutory prohibition cannot be read as if it impliedly incorporates the self-defense language of the Constitution, even if that language be deemed to be a limitation on the constitutional right—a point not addressed in this case or otherwise settled. Clearly, the statute is not written in that way. In fact, the plain meaning of the statute, on its face, makes it a criminal offense for a noncitizen (even though a resident of the United States for many years) to collect firearms or to take a rifle or shotgun hunting.

The charge in the instant case was that the "defendant, not a citizen of the United States did own or have in his possession a dangerous weapon, to wit: A FIREARM." There is no allegation whatsoever of any misuse, aggressive or otherwise. The facts in the majority opinion reciting aggressive use have not been judicially established and have no proper place in this case. No jury and no judge has ever determined that the facts recited are true. If, indeed, they are true, it is incomprehensible why the prosecution did not charge the defendant with a far more serious crime. The truth of the matter is that this case is nothing more or less than a conviction of an alien for possession of a firearm.[1]

In his concurring opinion, Justice Oaks concedes that "a general prohibition against possessing firearms could not validly make it a crime for an alien to possess a weapon in preparation for its use for the protected defensive purpose." But he then concludes that the appellant cannot rely upon Article 1, § 6 of the Utah Constitution "because the possession for which he was convicted was for purposes other than his own 'security and defense.'" That conclusion is puzzling, for the plain fact is that the defendant was convicted of possession *simpliciter*, and he attacks the statute on its face. Under those circumstances, I think it clear that he has standing to attack the statute. He was not charged with, or convicted of, any illegal *use* of the firearm. The statute clearly does not require any evidence as to one's purpose in possessing a firearm. The evidence adduced which tends to show aggressive use, was not only irrelevant but highly prejudicial. Even evidence of self-defense, had the defendant been able to adduce such, would also have been irrelevant. Self-defense simply is not a defense to a charge of possession.

**3.** The bases of affirmance relied upon in this opinion and in the Chief Justice's opinion make it unnecessary to consider whether the fully automatic weapon possessed by this defendant is an "arm" for purposes of our constitutional right "to bear arms for ... security and de-

fense ...." Compare, *e.g., State v. Kessler,* 289 Or. 359, 614 P.2d 94, 98–100 (1980).

**1.** I concur with Justice Oaks that it is unnecessary to decide in this case whether the constitutional provision applies to an automatic weapon.

I concur in the affirmance solely because the issue of unreasonable discrimination under Article I, § 24 of the Utah Constitution has not been raised on this appeal and because the Court declines to reassess *State v. Beorchia*, Utah, 530 P.2d 813 (1974), a case which should be reassessed because of the absence of any analysis in support of the conclusion there reached. Notwithstanding that observation, I express no opinion as to what the proper result should be and concur on the basis that *Beorchia* is at this point controlling by virtue of *stare decisis*.

HOWE, J., concurs in the concurring opinion of STEWART, J.

DURHAM, J., does not participate herein.