[No. 60220-4.    En Banc.    August 25, 1994.]

THE STATE OF WASHINGTON, *Respondent*, v. JUAN HERNANDEZ-MERCADO, *Petitioner*.

*Phillip J. Wetzel* and *Perrizo & Wetzel*, for petitioner.
*Barnett N. Kalikow, Prosecuting Attorney*, for respondent.

SMITH, J. — Petitioner Juan Hernandez-Mercado[1] seeks reversal of his conviction in the Okanogan County District Court under RCW 9.41.170 for unlicensed possession of a firearm by an alien who has not declared an intent to become a citizen of the United States. Denial of his motion to vacate judgment was affirmed by the Okanogan County Superior Court. The Court of Appeals, Division Three, granted discretionary review. We granted the State's motion to transfer from the Court of Appeals. We affirm the Superior Court.

## STATEMENT OF FACTS

Petitioner Juan Hernandez-Mercado had resided in the United States for over 20 years at the time of his offense on July 17, 1989.[2] On April 16, 1990, he pleaded "guilty" in the Okanogan County District Court to being a non-citizen in possession of a firearm in violation of RCW 9.41.170.[3] He was subsequently deported to his native Mexico by the United States Immigration and Naturalization Service (INS) for being an alien convicted of a crime involving a firearm.[4]

Petitioner re-entered this country and was detained on January 20, 1991 by the INS and held on a federal felony

---

[1]Throughout the case Petitioner is referred to as "Juan Hernandez-Mercado", although he signed his name in block script as "Juan Hernandez". The State does not dispute the facts stated by Petitioner in his Petition for Review. The record before this court is sparse and lacking in detail.

[2]Vague references were made to Petitioner's immigration status in briefs and oral argument. Although his status as a "special agricultural worker" was not questioned by the State, Petitioner's own counsel could not indicate when he acquired it.

[3]Petitioner claims that, without his knowledge, a pistol he did not own was in his vehicle. Clerk's Papers, at 57, 64. The State does not dispute this claim. Petitioner does not read, write or speak the English language and has no education in his native language, Spanish. Qualified interpreters were provided for him in all court proceedings. The Okanogan County District Court determined Petitioner's claim that his plea of "guilty" was improper because he was not advised that it would result in his deportation was without merit. This was affirmed by the Superior Court. The issue is not now before this court.

[4]Letter with attachments from Phillip Wetzel, Attorney at Law, to the Clerk of the Court of Appeals, Division Three (Dec. 30, 1993) filed in *State v. Hernandez-Mercado,* cause 12966-7-III.

charge of being an alien in the United States after deportation. At the hearing on that charge, he attacked the constitutionality of the Washington firearms statute, RCW 9.41.170. The Honorable Justin L. Quackenbush, United States District Court for the Eastern District of Washington, on June 4, 1991 accepted a plea of "guilty" to the charge of returning to the United States after deportation. The court imposed a term of 4 months in jail, with credit for time served, and supervised probation, specifically that "defendant not be found near any firearms". The court also stayed actual deportation pending determination of the constitutionality of the firearms statute in Washington courts.[5]

On April 12, 1991, Petitioner made a motion in the Okanogan County District Court to vacate judgment on his 1990 firearms conviction, claiming RCW 9.41.170 is unconstitutional on its face because it is pre-empted by federal immigration and firearms laws and denies him equal protection of the laws.[6] On June 13, 1991, the Honorable Christopher E. Culp issued a memorandum opinion denying the motion. Petitioner appealed to the Okanogan County Superior Court. On December 7, 1992, the Honorable James R. Thomas affirmed, incorporating the memorandum decision of the District Court.[7] Petitioner was arrested and deported to Mexico by the INS after the superior court decision.

The record does not indicate whether Petitioner is presently in the United States.[8] However, his wife, four children (ages 15, 13, 6 and 1 year), and several other extended family members reportedly now reside in Bridgeport, Washington as citizens of the United States or as "special agricul-

---

[5]Letter from Phillip Wetzel, *supra.*

[6]*This was nearly 1 year after the judgment was entered. Yet no one raises a question concerning the rules governing the motion to vacate judgment.*

[7]Clerk's Papers, at 9-10, 13-14.

[8]Letter from Phillip Wetzel, *supra.* At least Petitioner appeared in the United States District Court for the Eastern District of Washington on June 4, 1991, and was ordered to reside with his family in Bridgeport, Washington upon his release from jail. His deportation was stayed by that court pending resolution of the issue now before this court.

tural workers".[9] There is practically nothing in this record containing more than vague references to dates, status and circumstances.

Petitioner's attorney filed a motion for discretionary review in the Court of Appeals, Division Three, which was granted on April 2, 1993. The State had already on March 10, 1993 moved to transfer the case to this court. On April 5, 1994, we granted the motion to transfer.

## QUESTIONS PRESENTED

The questions presented in this case are whether RCW 9.41.170, which prohibits unlicensed possession of firearms by aliens (non-citizens) who have not declared their intention to become citizens of the United States, is pre-empted by federal immigration and firearms laws, and, in any event, whether the statute is facially unconstitutional because it denies aliens (non-citizens) the equal protection of the laws.

## DISCUSSION

RCW 9.41.170 provides in its entirety:

> It shall be unlawful for any person who is not a citizen of the United States, or who has not declared his intention to become a citizen of the United States, to carry or have in his possession at any time any shotgun, rifle, or other firearm, without first having obtained a license from the director of licensing, and such license is not to be issued by the director of licensing except upon the certificate of the consul domiciled in the state and representing the country of such alien, that he is a responsible person and upon the payment for the license of the sum of fifteen dollars: PROVIDED, That this section shall not apply to Canadian citizens resident in a province which has an enactment or public policy providing substantially similar privilege to residents of the state of Washington and who are carrying or possessing weapons for the purpose of using them in the hunting of game while such persons are in the act of hunting, or while on a hunting trip, or while such persons are competing in a bona fide trap or skeet shoot or any other organized contest where rifles, pistols, or shotguns are used as to [sic] weapons used [sic] in such contest. Nothing in this section shall be construed to allow aliens to hunt or fish in this state without first having obtained a regular hunting or fishing

---

[9]Clerk's Papers, at 63-65; Br. of Appellant, at 1-3. The record does not indicate which of Petitioner's relatives are citizens of the United States nor which have the immigration status of "special agricultural workers".

license. *Any person violating the provisions of this section shall be guilty of a misdemeanor.*

(Italics ours.)

## Pre-Emption

Petitioner claims the statute is pre-empted by the Federal Immigration and Nationality Act[10] (INA) because the INA "occupies the field" of alien regulation. He is mistaken.

██ ██ In *De Canas v. Bica*,[11] the United States Supreme Court stated:

Power to regulate immigration is unquestionably exclusively a federal power. But the Court has never held that every state enactment which in any way deals with aliens is a regulation of immigration and thus *per se* pre-empted by this constitutional power, whether latent or exercised. For example, *Takahashi v. Fish & Game Comm'n,* . . . and *Graham v. Richardson* . . . cited a line of cases that upheld certain discriminatory state treatment of aliens lawfully within the United States. . . . [T]hey remain authority that, standing alone, the fact that aliens are the subject of a state statute does not render it a regulation of immigration, which is essentially a determination of who should or should not be admitted into the country, and the conditions under which a legal entrant may remain.[12]

(Citations omitted.)

The Court in *De Canas* further stated that:

[F]ederal regulation . . . should not be deemed pre-emptive of state regulatory power in the absence of persuasive reasons — either that the nature of the regulated subject matter permits no other conclusion, or that the Congress has unmistakably so ordained.[13]

In this case, the principal activity regulated by RCW 9.41-.170 is not immigration, "which is essentially a determina-

---

[10]Ch. 477, 66 Stat. 163 (1952) (codified as amended at 8 U.S.C. § 1101 *et seq.* (1988)).

[11]424 U.S. 351, 47 L. Ed. 2d 43, 96 S. Ct. 933 (1976).

[12]*De Canas,* at 354-55 (citing *Takahashi v. Fish & Game Comm'n,* 334 U.S. 410, 415-22, 92 L. Ed. 1478, 68 S. Ct. 1138 (1948); *Graham v. Richardson,* 403 U.S. 365, 372-73, 29 L. Ed. 2d 534, 91 S. Ct. 1848 (1971)).

[13]*De Canas,* at 356 (quoting *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142, 10 L. Ed. 2d 248, 83 S. Ct. 1210 (1963)).

tion of who should or should not be admitted into the country, and the conditions under which a legal entrant may remain";[14] the principal activity regulated by the statute is possession of weapons. RCW 9.41.170 is thus not pre-empted by the Immigration and Nationality Act.

RCW 9.41.170 regulates possession of firearms by nonciti-zens. Petitioner claims this regulation is implicitly pre-empted by federal firearms laws. 18 U.S.C. § 922(g)(5) makes it a crime for "an alien, [who] is illegally or unlawfully in the United States" to possess "any firearm". However, 18 U.S.C. § 927[15] provides that:

> No provision of this chapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which such provision operates to the exclusion of the law of any State on the same subject matter, unless there is a direct and positive conflict between such a provision and the law of the State so that the two cannot be reconciled or consistently stand together.

■ Although Congress did not regulate possession of firearms by non-citizens who are legally or lawfully in the United States, it clearly permitted each state to regulate firearms to the extent there is no "direct or positive conflict . . . which cannot be reconciled or consistently stand together" with the federal provisions. In this case, RCW 9.41.170 requires that certain non-citizens lawfully in the United States obtain a license in order to possess a firearm. Failure to do so constitutes a misdemeanor. RCW 9.41.170 does not directly conflict with, nor is it inconsistent with, the federal provision prohibiting possession of a firearm by non-citizens (aliens) who are "illegally or unlawfully in the United States". RCW 9.41.170 is thus not pre-empted by federal firearms laws.

---

[14]*De Canas*, at 354-55.

[15]Title 18, United States Code, entitled "Crimes and Criminal Procedure", was revised and enacted by the act of June 25, 1948, ch. 645, 62 Stat. 683. It includes "Chapter 44 — Firearms", which includes sections 921 through 930 of Title 18 U.S.C.

## Equal Protection

■ Petitioner claims RCW 9.41. 170 is facially unconstitutional in violation of equal protection of the laws. Noncitizens lawfully in the United States generally have a right to equal protection of the laws to the same extent as citizens.[16]

The State correctly asserts that non-citizens do not have a right to bear arms under either the state or federal constitution. Actually, not even United States citizens have an absolute right to bear arms under the federal constitution[17] and states may regulate firearms under their police powers.[18] The State's argument, though, is of little consequence under equal protection analysis.

■ ■ "Under traditional equal protection principles, a State retains broad discretion to classify as long as its classification has a reasonable basis."[19] But decisions of the United States Supreme Court have established that "classifications based on alienage, like those based on nationality or race, are inherently suspect and subject to strict judicial scrutiny".[20] The State must establish that its classification is

---

[16]*Graham v. Richardson*, 403 U.S. at 371; *Takahashi*, 334 U.S. at 420; *Herriott v. Seattle*, 81 Wn.2d 48, 55-56, 500 P.2d 101 (1972); *Bridges v. Wixon*, 326 U.S. 135, 161, 89 L. Ed. 2103, 65 S. Ct. 1443 (1945); *Truax v. Raich*, 239 U.S. 33, 39, 60 L. Ed. 131, 36 S. Ct. 7 (1915); *Yick Wo v. Hopkins*, 118 U.S. 356, 369, 30 L. Ed. 220, 6 S. Ct. 1064 (1886). *See also United States v. Verdugo-Urquidez*, 494 U.S. 259, 265, 108 L. Ed. 2d 222, 110 S. Ct. 1056 (1990). *See* U.S. Const. amend. 14.

[17]*See United States v. Miller*, 307 U.S. 174, 178, 83 L. Ed. 1206, 59 S. Ct. 816 (1939); *State v. Vlacil*, 645 P.2d 677, 679-80, 28 A.L.R.4th 1086 (Utah 1982) (citing *United States v. Warin*, 530 F.2d 103, 37 A.L.R. Fed. 687 (6th Cir.), *cert. denied*, 426 U.S. 948, 49 L. Ed. 2d 1185, 96 S. Ct. 3168 (1976); *Stevens v. United States*, 440 F.2d 144, 149 (6th Cir. 1971)).

[18]*Vlacil*, at 679-80; *State v. Krantz*, 24 Wn.2d 350, 353, 164 P.2d 453 (1945). *See Patsone v. Pennsylvania*, 232 U.S. 138, 58 L. Ed. 539, 34 S. Ct. 281 (1914); *Hardison v. State*, 84 Nev. 125, 129, 437 P.2d 868, 871 (1968); *People v. Garcia*, 197 Colo. 550, 595 P.2d 228 (1979); *State v. Beorchia*, 530 P.2d 813 (Utah 1974). *See also United States v. Miller*, 307 U.S. at 178.

[19]*Graham v. Richardson, supra.*

[20](Footnotes omitted.) *Graham v. Richardson*, 403 U.S. at 371-72, 376; *Nyquist v. Mauclet*, 432 U.S. 1, 53 L. Ed. 2d 63, 97 S. Ct. 2120 (1977); *Examining Bd. of Eng'rs, Architects & Surveyors v. Flores de Otero*, 426 U.S. 572, 49 L. Ed. 2d 65, 96 S. Ct. 2264(1976); *In re Griffiths*, 413 U.S. 717, 37 L. Ed. 2d 910, 93 S.

"necessary to promote a *compelling* governmental interest".[21] Under strict scrutiny, " 'the governmental interest claimed to justify the discrimination is to be carefully examined . . . to determine whether that interest is legitimate and substantial, and inquiry must be made whether the means adopted to achieve the goal are necessary and precisely drawn.' . . . Alienage classifications by a State that do not withstand this stringent examination cannot stand."[22]

RCW 9.41.170 was originally enacted in 1911[23] and has not been substantially amended except for the 1969 addition of the proviso exempting certain Canadian citizens.[24] The last minor amendment to the statute was made in 1979.[25] Since 1911 the United States immigration laws have become vastly more complex. New classifications of non-citizens now exist which may not have been contemplated by the Washington Legislature in 1911 and even in 1969 and 1979.

Presently there are several classes of non-citizens who have a legal right to reside in this country even though they have not declared an intent to become citizens of the United States. Indeed, non-citizens who have the legal status of "permanent resident" may not apply for citizenship, which is essentially a declaration of intent to become a citizen, before a certain time has elapsed after they attain "permanent resident" status. "Special agricultural worker" status, created by federal statute in 1986, effective in 1987,[26] and under which Petitioner Hernandez-Mercado may have legally resided in

---

Ct. 2851 (1973). *See also State v. Chumphol*, 97 Nev. 440, 634 P.2d 451 (1981); *Sandiford v. Commonwealth*, 217 Va. 117, 225 S.E.2d 409 (1976); *People v. Rappard*, 28 Cal. App. 3d 302, 104 Cal. Rptr. 535 (1972); *Raffaelli v. Committee of Bar Examiners*, 7 Cal. 3d 288, 496 P.2d 1264, 101 Cal. Rptr. 896 (1972).

[21]*Graham v. Richardson, supra* at 376.

[22]*Nyquist v. Mauclet*, 432 U.S. at 7 (citing *Flores de Otero*, 426 U.S. at 605; *In re Griffiths*, 413 U.S. at 721-22).

[23]Laws of 1911, ch. 52, § 1.

[24]Laws of 1969, 1st Ex. Sess., ch. 90, § 1.

[25]Laws of 1979, ch. 158, § 3.

[26]*See* 8 U.S.C. § 1160(a)(1).

the United States, does not permit application for "permanent resident" status for at least 1 year from the time "special agricultural worker" status is attained if the person fits into a certain category.[27] Additional time is required if the person fits into other categories.[28] The record does not indicate when Petitioner was documented or when he would be eligible to apply for "permanent resident" status.

The State claims to have a compelling interest in discriminating against non-citizens, citing a comprehensive legislative scheme, which includes RCW 9.41.170, designed to "keep guns out of dangerous hands".[29] The scheme prohibits certain dangerous criminals from possessing "any firearm", and if found in possession of a "short firearm or pistol"[30] they would be guilty of a class C felony.[31] Persons who are mentally infirm are also prohibited from possessing "any firearm" under penalty of a class C felony.[32] However, persons convicted of a crime not specified in RCW 9.41.040(5) and "who received a probationary sentence" are not subject to the prohibition. Delivery of a pistol to persons convicted of certain crimes, drug addicts, habitual drunkards and persons under the age of 21 years is prohibited.[33] Minors under the age of 14 years must be supervised by a competent adult while in possession of a firearm for hunting or target practice.[34] Machine guns are prohibited unless intended for government use.[35] There is nothing in the "statutory scheme" which establishes that the status of

---

[27]See 8 U.S.C. § 1160(a)(2)(A).

[28]See 8 U.S.C. §§ 1160(a)(2)(B), 1161.

[29]RCW 9.41 entitled "Firearms and Dangerous Weapons".

[30]RCW 9.41.010(1) states: " 'Short firearm' or 'pistol' as used in this chapter means any firearm with a barrel less than twelve inches in length."

[31]RCW 9.41.040(1), (2), (3), (4); see also RCW 9.41.045.

[32]RCW 9.41.040(6).

[33]RCW 9.41.040, .080.

[34]RCW 9.41.240.

[35]RCW 9.41.190-.225.

being foreign-born of itself creates "dangerous hands" in the context of firearms control.

RCW 9.41.050 prohibits all persons in the State from carrying a pistol concealed on their person outside their home or fixed place of business or carrying or placing a loaded pistol in a vehicle without a concealed weapons license. Procedures for obtaining a concealed weapons license are specified, including waiting periods during which law enforcement would be able to conduct a background investigation. RCW 9.41.050 also provides that non-citizens of the United States who have not declared their intention to become citizens "shall meet the additional requirements of RCW 9.41.170".[36]

The State claims the "additional requirements" in RCW 9.41.170 are essential to public safety because they allow the State to obtain information from foreign countries concerning the level of responsibility of non-citizens who have not declared their intention to become citizens of the United States. There is no indication in the record whether this assertion is borne out by experience in law enforcement, but it is not challenged by Petitioner.

In this case, Petitioner's conduct in possessing a pistol in his vehicle without a concealed weapons license could have been charged under RCW 9.41.050. Any person in the State, regardless whether a citizen or a non-citizen, would be subject to a criminal charge under that statute.[37] But the State chose to charge Petitioner under RCW 9.41.170.

RCW 9.41.170 is not necessary to safeguard the State's interest in keeping "firearms out of dangerous hands". The implicit exception in RCW 9.41.170 for persons who have "declared [their] intention to become a citizen of the United States" at least raises the question of equal protection of the laws. The United States Supreme Court in *Nyquist v. Mauclet*[38] rejected New York State's claim that strict scrutiny of

[36]RCW 9.41.070(5).

[37]RCW 9.41.050(2) and (3) specifically address pistols carried in vehicles.

[38]432 U.S. 1, 53 L. Ed. 2d 63, 97 S. Ct. 2120 (1977). The Court declared unconstitutional as a violation of the equal protection clause New York's statu-

such a classification is not required because it does not discriminate between citizens and all non-citizens, but only against those non-citizens who have not declared their intention to become citizens. The Court stated "[t]he important points are that [the statute] is directed at aliens and that only aliens are harmed by it. The fact that the statute is not an absolute bar does not mean that it does not discriminate against the class."[39] RCW 9.41.070(5), enacted by Laws of 1988, ch. 219, § 1, seems to be subject to a similar equal protection challenge because it establishes classifications based on alienage. Notwithstanding this, Petitioner Hernandez-Mercado has not established that RCW 9.41.070 is unconstitutional on its face.

SUMMARY AND CONCLUSIONS

RCW 9.41.170 is not pre-empted by the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.*, because it does not regulate the subject matter of immigration, which is essentially a determination of who should or should not be admitted into the United States and the conditions under which a person entering this country may remain.

RCW 9.41.170 is also not pre-empted by United States firearms laws under 18 U.S.C. §§ 921 through 930. Section 922(g)(5) prohibits aliens not lawfully in the United States from possessing any firearm. However, section 927 explicitly permits states to co-regulate firearms so long as the regulation is consistent with federal firearms laws.

There is no question that under the United States Constitution there is no absolute right even for citizens to bear

tory denial of financial aid for higher education to non-citizens of the United States who are lawfully in the United States.

[39]*Nyquist v. Mauclet*, 432 U.S. at 8-9, citing cases where the Court has applied strict scrutiny even though the persons aggrieved could have "readily" applied to change or changed their status to "citizen". *See Graham v. Richardson, supra; In re Griffiths, supra; Sugarman v. Dougall*, 413 U.S. 634, 37 L. Ed. 2d 853, 93 S. Ct. 2842, 93 S. Ct. 2861 (1973). The Court in *Nyquist*, at 8 n.10 also quoted the District Court, which stated that "[t]hose aliens who apply, or agree to apply when eligible, for citizenship are relinquishing their alien status. Because some aliens agree under the statute's coercion to change their status does not alter the fact that the classification is based solely upon alienage."

arms and that the states may regulate firearms under their police powers. However, under equal protection analysis, classifications based on alienage, like those based on nationality or race, are inherently suspect and subject to strict judicial scrutiny even if the right impaired is not a fundamental right. The State must establish that the discriminatory classification is necessary to promote a compelling governmental interest. The State claims that RCW 9.41.170 is necessary to promote a compelling interest in public safety. RCW 9.41 is devoted entirely to firearms regulation. The State's argument is weak, but so is Petitioner Hernandez-Mercado's argument on equal protection of the laws.

In any constitutional challenge a statute is presumed constitutional[40] unless its unconstitutionality is proved beyond a reasonable doubt.[41] In a facial challenge, we look to the face of the statute to determine whether a conviction under it can be upheld.[42] In this case, petitioner makes only a facial challenge to RCW 9.41.170 and not a challenge as applied to him.[43] However, because the record in this case is so sparse and essential facts are not known, even an "as applied" constitutional challenge to the statute would fail although that challenge would require a less strict standard than a facial one.[44]

Petitioner Juan Hernandez-Mercado, whose personal and family story may evoke sympathy, has not convinced this court that RCW 9.41.170 is unconstitutional on its face as a violation of equal protection of the laws.

On the limited record before this court, we are unwilling to declare RCW 9.41.170 unconstitutional as a violation of the equal protection clause of the United States Constitution. We affirm the decision of the Okanogan County

---

[40]*Seattle v. Shepherd*, 93 Wn.2d 861, 865, 613 P.2d 1158 (1980).

[41]*State v. Aver*, 109 Wn.2d 303, 307, 745 P.2d 479 (1987).

[42]*State v. Aver, supra.*

[43]*State v. Worrell*, 111 Wn.2d 541-42, 761 P.2d 56 (1988).

[44]*Sintra, Inc. v. Seattle*, 119 Wn.2d 1, 17, 829 P.2d 765, *cert. denied sub nom. Robinson v. Seattle*, 506 U.S. 1028, 121 L. Ed. 2d 598, 113 S. Ct. 676 (1992).

Superior Court which denied Petitioner Juan Hernandez-Mercado's motion to vacate the Okanogan County District Court judgment upon his 1990 plea of "guilty" to the misdemeanor offense of illegal possession of a firearm by a non-citizen of the United States in violation of RCW 9.41.170.

UTTER, BRACHTENBACH, DOLLIVER, DURHAM, GUY, JOHNSON, and MADSEN, JJ., concur.

ANDERSEN, C.J., concurs in the result.