KELLY, Circuit Judge,
concurring.
With the exception of the Second Amendment discussion in Part II, I join the court’s opinion. Concerning the Second Amendment, I would affirm the conviction by simply noting that the obvious purpose of this prosecution — restricting concealed weapons on a military base to identified military personnel — is a reasonable restriction and thus does not contravene the Second Amendment. I write separately because I disagree with the analysis in the court’s opinion and because neither Supreme Court nor Tenth Circuit precedent relied upon by the this court adequately addresses the question asked and answered: “Whether a federal prosecution pursuant to the ACA [Assimilative Crimes Act] for violating a state gun control statute violates an individual’s Second Amendment rights.”
Mr. Parker was found guilty of violating Utah Code Ann. § 76-10-505,[1] as assimi *1286 lated by 18 U.S.C. § 13(a). The State provision generally prohibits carrying a loaded firearm in or on a vehicle.[2] Although the Supreme Court has twice stated that the Second Amendment does not apply to States because it is solely a limitation on national power, Presser v. Illinois, 116 U.S. 252, 265, 6 S.Ct. 580, 29 L.Ed. 615 (1886); United States v. Cruikshank, 92 U.S. 542, 553, 23 L.Ed. 588 (1875); 2 Ronald D. Rotunda & John E. Nowak, Treatise on Constitutional Law-Substance and Procedure § 14.2 at 520 n. 4 (3d ed.1999); see also State v. Vlacil, 645 P.2d 677, 680 (Utah 1982) & id. at 681 n. 1 (Oaks, J., concurring), the State provision in this case is being enforced on a federal enclave by the federal government. See Lewis v. United States, 523 U.S. 155, 160, 162, 118 S.Ct. 1135, 140 L.Ed.2d 271 (1998) (discussing function and application of Assimi-lative Crimes Act).
In United States v. Miller, 307 U.S. 174, 59 S.Ct. 816, 83 L.Ed. 1206 (1939), the Supreme Court rejected a Second Amendment challenge to the National Firearms Act. The case involved a restricted firearm, specifically a double barrel twelve gauge shot gun having a barrel less than eighteen inches in length. In reversing the district court which found a Second Amendment violation as a matter of law, the Court held:
In the absence of any evidence tending to show that possession or use of a “shotgun having a barrel of less than eighteen inches in length” at this time has some reasonable relationship to the preservation or efficiency of a well regulated militia, we cannot say that the Second Amendment guarantees the right to keep and bear such an instrument. Certainly it is not within judicial notice that this weapon is any part of the ordinary military equipment or that its use could contribute to the common defense. Aymette v. State of Tennessee, 2 Humph., Tenn., 154, 158.
Miller, 307 U.S. at 178, 59 S.Ct. 816. In Lewis v. United States, 445 U.S. 55, 65, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980), the Court held that the statute prohibiting a felon from possessing a firearm was not violative of due process, noting that the federal firearm regulatory restrictions “are neither based upon constitutionally suspect criteria, nor do they trench upon any constitutionally protected liberties.” Id. at n. 8. The Court cited Miller for the proposition that “the Second Amendment guarantees no right to keep and bear a firearm that does not have ‘some reasonable relationship to the preservation or efficiency of a well regulated militia.’ ” Id. (quoting Miller, 307 U.S. at 178, 59 S.Ct. 816).
Although not required by the cases before them, courts, including the Tenth Circuit, have concluded based upon the above that the Second Amendment is a collective, rather than an individual right. See United States v. Graham, 305 F.3d 1094, 1106 (10th Cir.2002). Our first case interpreting Miller involved prosecution under 26 U.S.C. § 5861(d) for unlawful possession of an unregistered machine gun. United States v. Oakes, 564 F.2d 384, 385 (10th Cir.1977). The court, despite the universal admonition to decide constitutional issues narrowly, first rejected an “absolute right to keep arms,” and then rejected an argument based upon the defendant’s apparent membership in a class of persons constituting the Kansas militia. Id. at 387. Even *1287 though the defendant might have technically been a member of the Kansas militia, he had not shown any connection between the restricted firearm and the militia. Id. United States v. Baer, 235 F.3d 561, 564 (10th Cir.2000), involved a prosecution under 18 U.S.C. § 922(g)(1) & (k) for unlawful possession of a firearm by a felon (restricted person) and of a firearm with an obliterated serial number (restricted firearm). The court stated that “the circuits have consistently upheld the constitutionality of federal weapons regulations ... absent evidence that they in any way affect the maintenance of a well regulated militia.” Id. Regardless of the fact that a machine gun might be useful in a well regulated militia, it is apparent that a felon would not be.
Beginning with United States v. Haney, 264 F.3d 1161 (10th Cir.2001), the analysis in the Tenth Circuit became more structured. Haney involved prosecution under 18 U.S.C. § 922(o) for unlawful possession of a machine gun (restricted firearm). The court held that “a federal criminal gun-control law does not violate the Second Amendment unless it impairs the state’s ability to maintain a well-regulated militia.” Haney, 264 F.3d at 1165. The court then discussed why legally and factually, the defendant could not prevail. Because the federal gun-control statute had an exemption for possession under the authority of a State, the State’s ability to maintain a well-regulated militia could not be impaired as a matter of law. Id. The court, in what was clearly dicta, then remarked on what factual showing a defendant need make to prove a Second Amendment violation:
As a threshold matter, he must show that (1) he is part of a state militia; (2) the militia, and his participation therein, is “well regulated” by the state; (3) machine guns are used by that militia; and (4) his possession of the machine gun was reasonably connected to his militia service.
Id.; see also United States v. Crawley, 837 F.2d 291, 292 (7th Cir.1988) (discussing dictum). The court (without any record support) speculated that a “well-regulated” militia is one actively maintained and trained by the state. Haney, 264 F.3d at 1165-66. Our subsequent cases have applied this test, though not needed in the context of restricted persons or devices, to conclude that no Second Amendment violation occurred.
United States v. Graham, 305 F.3d 1094 (10th Cir.2002), involved a prosecution under 18 U.S.C. § 842(a)(1) proscribing knowingly engaging in the business of dealing in explosive materials without a license, which, if one had a wild imagination, could be viewed as involving a restriction on a weapon. Id. at 1097, 1106. Almost as an afterthought, the defendant attempted to cobble together an argument that explosive devices have a common use in military training exercises, and therefore such devices are part of a right to participate in those exercises and to keep and bear arms. Id. at 1106. The court correctly noted that even assuming a defense was stated, Second Amendment rights are subject to reasonable governmental restrictions. Id. The court’s discussion regarding the Haney test is totally unnecessary to the holding. Likewise in United States v. Bayles, 310 F.3d 1302, 1307 (10th Cir.2002), a prosecution under 18 U.S.C. § 922(g)(8) for possession of a firearm while subject to a domestic violence protective order, while the court noted gratuitously that evidence of the four-part Haney test was not offered, the bottom line was that the statute was a reasonable restriction that did not infringe Second Amendment rights. Regardless of the Haney test, defendant was a restricted person and could not posses a weapon.
*1288 Ail of these cases involved uniform, federal restrictions on various types of firearms or uniform, federal restrictions on the persons possessing such firearms. Whether the Second Amendment right is an individual right or a collective right has not been decided by the Supreme Court-Miller did not define this aspect of the Second Amendment right, and we need not reach the issue here. See Printz v. United States, 521 U.S. 898, 938 n. 1, 117 S.Ct. 2365, 138 L.Ed.2d 914 (1997) (Thomas, J., concurring). Justice Thomas has acknowledged the “growing body of scholarly commentary” indicating that the Second Amendment right is an individual right, although he also notes contrary authority supporting a collective rights view. Id. at 938 n. 2, 117 S.Ct. 2365. Two circuits have examined this question exhaustively in light of this academic debate and reached contrary conclusions. Compare United States v. Emerson, 270 F.3d 203, 260 (5th Cir.2001) (individual right), cert. denied, 536 U.S. 907, 122 S.Ct. 2362, 153 L.Ed.2d 184 (2002), with Silveira v. Lockyer, 312 F.3d 1052, 1086 (9th Cir.2002) (collective right), cert. denied, - U.S. -, 124 S.Ct. 803, 157 L.Ed.2d 693 (2003). The Fifth Circuit’s approach is deserving of serious consideration. The court reasoned that the preamble of the Second Amendment (“A well regulated Militia, being necessary to the security of a free State,”) could not override the clear substantive guarantee of the Second Amendment (“the right of the people to keep and bear Arms, shall not be infringed.”). Emerson, 270 F.3d at 233. Viewing the amendment against the historical background that existed at the time, it concluded that the people at large, from whom any militia would be formed, are guaranteed the right to keep and bear arms (and be conversant with their use) so as to facilitate the objective of the preamble. Id. at 234-36. Like this court, the Fifth Circuit recognized reasonable restrictions on the Second Amendment right are constitutional. This ease also can be decided on that narrow basis-there is no need to dilute prematurely what many consider to be one of the most important amendments to the United States Constitution.

. That section provides:
Carrying loaded firearm in vehicle, on street, or in prohibited area.
(1) Unless otherwise authorized by law, a person may not carry a loaded firearm:
(a) in or on a vehicle;
(b) on any public street; or
(c) in a posted prohibited area.
(2) A violation of this section is a class B misdemeanor.
Utah Code Ann. § 76-10-505.

. Mr. Parker did not declare a loaded .38 Colt double action six-shot revolver at the gate of the military installation and it was discovered in a random search. Although the firearm was at one time in police service, Mr. Parker contended at the trial that it was neither military grade nor current peace officer grade, but rather solely for personal self-defense and target practice. Aplt.App. at 30, 34.