Argued June 17, affirmed September 9, 1959

# STATE OF OREGON *v.* ROBINSON

343 P. 2d 886

*Charles D. Burt,* Salem, argued the cause for appellant. With him on the brief were Robin D. Day and Gary D. Gortmaker, Salem, and Ronald D. Watson, Portland.

*David Robinson, Jr.,* Deputy District Attorney, Portland, argued the cause for the respondent. With him on the brief was Charles E. Raymond, District Attorney, Portland.

Before McALLISTER, Chief Justice, and ROSSMAN, O'CONNELL and MILLARD, Justices.

ROSSMAN, J.

This is an appeal by the defendant from a judgment of the circuit court for Multnomah County which found him guilty of the crime proscribed by ORS 166.270 and which in his case consisted of being a convicted felon who had in his possession a firearm capable of concealment upon his person. With the express consent of the defendant the cause was tried by the judge without a jury.

▮ The defendant-appellant presents two assignments of error. The first of them challenges the valid-

ity of the act upon which the indictment was based—
ORS 166.270 which says:

"Any unnaturalized foreign-born person or any
person who has been convicted of a felony against
the person or property of another or against the
Government of the United States or of this state,
or of any political subdivision of this state, who
owns, or has in his possession or under his custody
or control any pistol, revolver, or other firearm
capable of being concealed upon the person, or
machine gun, shall be punished upon conviction by
imprisonment in the penitentiary * * *."

That section of our laws, according to the defendant,
arbitrarily denies to ex-convicts and unnaturalized
foreign-born persons rights and privileges which others
possess. It violates, so he says, §§ 20 and 27, Art I,
Constitution of Oregon, and the equal protection clause
of the Fourteenth Amendment of the Constitution of
the United States.

Art I, § 20 of the Oregon Constitution reads:

"No law shall be passed granting to any citizen
or class of citizens privileges, or immunities, which
upon the same terms, shall not equally belong to all
citizens."

Art I, § 27, Constitution of Oregon, declares:

"The people shall have the right to bear arms
for the defense of themselves, and the State, but the
Military shall be kept in strict subordination of the
civil power."

The defendant claims that if ORS 166.270 is recog-
nized as valid, it is possible to adjudge guilty an alien
who possesses in his homeland a firearm but who is
completely unarmed during his visit in Oregon. He
also deems the act unreasonable in denying to ex-
convicts whose felonies were non-violent the right to
possess arms.

ORS 174.040 says:

"It shall be considered that it is the legislative intent, in the enactment of any statute, that if any part of the statute is held unconstitutional, the remaining parts shall remain in force unless:

"(1) The statute provides otherwise;

"(2) The remaining parts are so essentially and inseparably connected with and dependent upon the unconstitutional part that it is apparent that the remaining parts would not have been enacted without the unconstitutional part; or

"(3) The remaining parts, standing alone, are incomplete and incapable of being executed in accordance with the legislative intent."

The challenged statute has as its subject matter two groups of individuals: (1) "any unnaturalized foreign-born person," and (2) "any person who has been convicted of a felony."

A firearm of the kind described in ORS 166.270 is plainly dangerous, especially if possessed by one whose past conduct revealed a disregard for law and the normal moral restraints. The legislature, in writing that act, was attempting to prevent crimes of the kind in which concealed weapons play a part. It was not concerned with the type of individual who owns a gun but whose past conduct has revealed no indication that he will misuse it. It had in mind two classes of individuals who possess firearms capable of concealment on the person: (1) those whose past conviction of a felony showed an unsocial attitude and (2) unnaturalized aliens. Obviously, it is difficult to spot the law breaker before he takes an unlawful course, and yet the legislature has the right to make efforts in that direction. The legislature evidently believed that ex-convicts who possess firearms of the kind described in ORS 166.270 are more likely to commit evil than if

they are forced to remain unarmed. We can not say that a classification based upon that proposition is capricious or that it is irrelevant to the legislative purpose. Many other states have enacted similar legislation and it has been recognized as valid. The defendant seeks to make a distinction between ex-convicts who committed crimes of violence and those whose crimes were such as embezzlement and income tax evasion. A person who embezzles money, fails to report his income or commits any other non-violent felony is evidently deficient in the deference to law which must be expected of all who live in a democracy. Such a person displays a lack of proper regard for the duties of citizenship and the normal restraint to which virtually all others yield instinctively. By his own felonious conduct he classifies himself and places himself in a category different from that composed of the law abiding. When the legislature concludes that a person of that kind can not be trusted with a concealable weapon we surely can not say that its decision lacks reason.

*People v. James,* 71 Cal App 374, 235 P 81, sustained the validity of a statute virtually the same as ORS 166.270. We take the following from that decision:

"By the very terms of the act defendant is excluded from the right to own or possess firearms, and it is within the power of the Legislature to say that such ownership or possession in a person convicted of a felony may be harmful to the public welfare and to prescribe a penalty therefor * * *

"* * * It cannot be assumed that the Legislature did not have evidence before it or that it did not have reasonable grounds to justify the legislation and to conclude that unnaturalized foreign-born persons and persons who have been convicted

of a felony were more likely than others to unlawfully use firearms or to resort to force in defiance of law. * * *"

See to similar effect *People v. Camperlingo,* 69 Cal App 466, 231 P 601; *People v. McCloskey,* 76 Cal App 227, 244 P 930; *State v. Wyckoff,* 27 NJ Super 322, 99 A2d 365; and *People v. Saltis,* 328 Ill 494, 160 NE 86 (appeal dismissed 277 US 575). In the McCloskey case the court made this observation:

"It has been held in a number of cases that the act is a valid and reasonable exercise of the police power of the state. 'It is a well-recognized function of the legislature in the exercise of the police power to restrain dangerous practices and to regulate the carrying and use of firearms and other weapons in the interest of public safety * * *.'"

■ The defendant has cited no decision which holds to the contrary of those just mentioned. He claims, however, as we have said, that ORS 166.270 can authorize the conviction of an unarmed alien temporarily in this state who owns a gun which he keeps in his native land. We notice that the California court sustained legislation virtually the same as ours. *Ex parte Rameriz,* 193 Cal 633, 226 P 914, 34 ALR 51, bestowed extensive attention upon the problem and sustained the power of the legislature to deny to aliens the right to own or possess firearms with a barrel less than 12 inches in length. The annotation to *People v. Zerillo,* 219 Mich 635, 189 NW 927, 24 ALR 1115, at 1119, takes note of several decisions which sustained legislation that denied aliens the right to possess firearms.

However, we can not understand how the defendant is in a position to raise the contention concerning aliens. He does not claim that he is an alien. It is not inappropriate to mention also that the defendant does

not say that his previous felony was of a non-violent kind. As was said in *State v. Anthony,* 179 Or 282, 169 P2d 587:

> "It is an accepted rule that he who challenges an act under the 14th Amendment must be one against whom the act in fact operates without due process. This defendant is not such a person."

This is not an instance in which a defendant claims that others should have been included within the statute under which he is being prosecuted and that the legislature's exclusion of them places him in a disfavored class. Rather, he argues that aliens should not have been included in the act and seemingly he seeks to become their vindicator. If the act is invalid as to aliens, and we make no intimation to that effect, its validity as to ex-convicts can be readily sustained under ORS 174.060, previously quoted.

■ The defendant, as we have mentioned, argues that the act in question infringes upon Art I, § 27, Constitution of Oregon, which is set forth in a preceding paragraph of this opinion. According to page 469 of A History of the Oregon Constitution (Carey), Art I, § 27, was patterned upon and is identical to Art I, §§ 32 and 33, Constitution of Indiana. *McIntyre v. State,* 170 Ind 163, 83 NE 1005, held that the Indiana provision (§ 32) permits reasonable regulation of the right to bear arms and that accordingly legislation prohibiting the carrying of concealed weapons is valid. We do not believe that *In Re Brickey,* 8 Ida 597, 70 P 609, and *People v. Zerillo,* supra, warrant a contrary conclusion. It is our belief that ORS 166.270, at least so far as ex-convicts are concerned, is valid legislation. The first assignment of error, in our opinion, is without merit.

■ The second assignment of error is based upon a

motion predicated upon ORS 134.120 for an order of dismissal. The motion gave as its grounds "that this case has not been brought to trial within the next term of court following the term for which the court—of the issuing of this information, which the court will notice is in the May term of 1957."

ORS 134.120 provides:

"If a defendant indicted for a crime, whose trial has not been postponed upon his application or by his consent, is not brought to trial at the next term of the court in which the indictment is triable after it is found, the court shall order the indictment to be dismissed, unless good cause to the contrary is shown."

ORS 4.140 says:

"The terms of the circuit court in the fourth judicial district shall be held in Multnomah County on the first Monday of each month except July and August."

The "next term of the court" in which the defendant's case should have been tried, unless "good cause to the contrary" was established, was the June term.

Article I, § 10, Constitution of Oregon, provides:

"* * * justice shall be administered openly and without purchase, completely and without delay * * *."

The indictment was returned into court May 24, 1957. The defendant plead not guilty June 7, 1957. On July 19, 1957, he filed a demurrer to the indictment which challenged its sufficiency but which said nothing whatever about delay in coming to trial. In fact, the subject of purported tardy prosecution was not mentioned until the morning of the trial, that is, February 20, 1958. The demurrer was argued orally and there-

after both the state and the defendant presented briefs to the trial judge. December 12, 1957, the demurrer was overruled. The case was set to be tried January 28, 1958. On that day Judge Hawkins, who it was assumed would try the case, was engaged with a civil case which had not yet been concluded, but the defendant's case was transferred to Judge Dahl. At 1:30 p.m. when Judge Dahl was ready to proceed it developed that the defendant had left the court house and could not be found. The attorneys for the state and the defense thereupon conferred as to a new trial date. The case was set for February 20, 1958, and upon that day it was tried.

The following narrative portrays the progress of the case through the court.

May 24, 1957—Indictment found and returned into court.

June 3, 1957—New term of court began.

June 7, 1957—Defendant arraigned and plead not guilty.

June 10, 1957—Order entered reducing bail.

July 19, 1957—Defendant demurred to indictment.

July 22, 1957—Defendant filed initial memorandum of authorities.

August 31, 1957—End of June term of court. General order entered setting over all unfinished business for lack of time to hear and dispose of the same.

October 5, 1957—End of September term of court. General order entered continuing all unfinished business to following term of court for lack of time to hear and dispose of the same.

November 2, 1957—End of October term of court. General order entered setting over all unfinished business to following term of court for lack of time to hear and dispose of the same.

November 30, 1957—End of November term of court. General order entered setting over all unfinished business to following term of court for lack of time to hear and dispose of the same.

December 12, 1957—Demurrer overruled. Case continued to January term of court for trial.

January 4, 1958—End of December term of court. General order continuing all unfinished business until next regular term of court for lack of time to dispose of the same.

January 28, 1958—Case came on for trial but was postponed due to the inability of defendant's counsel to find the defendant.

January 31, 1958—Case postponed to February term of court by an order which stated that defendant's counsel consented thereto.

February 1, 1958—January term of court ends.

February 3, 1958—General order setting over unfinished business to February term of court for lack of time to hear and dispose of the same.

February 20, 1958—Defendant renews demurrer; disallowed. Defendant moves to dismiss for delay; denied. Defendant tried, found guilty.

February 25, 1958—Defendant sentenced.

It will be noticed that the defendant pled not guilty June 7, 1957, but submitted a demurrer to the indictment July 19, 1957. The demurrer was in writing and, referring to the indictment, stated its grounds as follows:

"* * * the facts stated therein do not state a cause of action against the defendant, and * * * the same purportedly states more than one cause of action."

A demurrer generally precedes the plea and it is contrary to the common practice for the demurrer to follow the plea, yet no one has presented any issue upon that score. ORS 135.610 says:

"The demurrer shall be put in, in open court, either at the time of the arraignment or at such

other time as may be allowed to the defendant for that purpose."

Since the demurrer became the subject of oral argument and of briefs, as well as of a ruling, we shall assume that the defendant was permitted to take the unorthodox course.

■ As we have said, the "next term of the court" in which, in the absence of "good cause to the contrary," the case should have been tried was the June term. That term extended through to the September term and ended August 31, 1957. June 7, as we have seen, the defendant plead not guilty. The computation of time for the purposes of ORS 134.120 does not begin with the day when the plea is entered but with the term in which an indictment is returned. *State v. Crosby*, 217 Or 393, 342 P2d 831. Accordingly, the computation of time for the purposes of determining whether or not the demands of ORS 134.120 were met in the case before us began with the May term and not with June 7 when the plea was entered.

■ July 19, 1957, which was within the June term, and therefore within "the next term of the court" after the return of the indictment, the defendant filed the demurrer which we have mentioned. When he filed it he realized that time would be consumed in its disposition. Undoubtedly it was filed in good faith and not as a time catching device. The records show that the defendant on July 22, 1957, filed a brief in support of his demurrer. The order which was later entered overruling the demurrer states that the latter was submitted to the court both by oral argument and briefs submitted by both sides. Accordingly, we repeat, that when the demurrer was filed the defendant must have realized that he was thereby occasioning delay. The delay thus created falls within the term of ORS 134.120

which is, "has not been postponed upon his application or by his consent."

■ Although defendant's first brief upon the issues raised by the demurrer was presented to the court July 19 and no ruling was made upon the demurrer until December 12, the defendant does not contend that the period that elapsed between the two incidents was unreasonable. It was ten days less than five months in extent. In *State v. Crosby,* supra, the period that elapsed between the day when the last brief upon the demurrer was filed and the day when the issues were decided was thirteen months. But in that period the district attorney and the trial judge had somehow overlooked the demurrer and the briefs. It was their inattention to the matter that accounted for the delay. The latter was deemed by this court as unreasonable and inexcusable. We do not know from the record in the case now before us when the last brief was presented to the trial judge, but it must have been at some time after July 19. The defendant makes no contention that the trial judge overlooked the demurrer or consumed an unreasonable amount of time in coming to his decision. The period which extended from the day when the demurrer was filed, July 19, 1957, to the day when it was decided, December 12, 1957, must be deemed postponement to which the defendant consented. To that extent he tolled the operation of ORS 134.120.

■ We come now to the period from December 12, 1957, to February 20, 1958, when the case was tried. It will be noticed from the narrative which is set forth in a preceding paragraph that the circuit court, while the cause was pending before it, entered an order at the end of each term which continued into the next all

unfinished business. Each order stated as its basis that the court lacked time to have completed or reached the unfinished business. No effort has been made to challenge the verity of those recitals or impeach in any other way the orders. As held in *State v. Kuhnhausen,* 201 Or 478, 266 P2d 698, 272 P2d 225, an order of that kind imports verity and can be impeached only in the court which entered it. We must, therefore, take it for granted that if the case met with any delay in the period from December 12, 1957, to February 20, 1958, for which the circuit court could be deemed accountable, the monthly orders which continued unfinished business acquitted the court by reciting that lack of time denied the court opportunity to have done more.

But the defendant's case was not neglected by the circuit court in the period just mentioned (December 12, 1957, to February 20, 1958). If we assume that the filing of the demurrer was tantamount to a withdrawal of the plea of not guilty, then when the demurrer was overruled the defendant should have been asked for his plea. But seemingly the court assumed that the plea of not guilty was not actually withdrawn when the demurrer was presented and, therefore, placed the case upon its calendar for trial to be held January 28, 1958. The defendant has not contended that the interval between December 12, 1957, and January 28, 1958, was unduly long. On January 28, 1958, Judge Hawkins, to whom the case was assigned for trial, explained to counsel that he could not try the case that day because he was engaged in a trial which was taking more time than had been anticipated. Shortly he told the attorneys that Judge Dahl was available to try the case. The defendant made no intimation at that time that ORS 134.120 had been violated, nor did he move for a dismissal. In the meantime the defendant had left the

court house and when Judge Dahl was ready at 1:30 p.m. to proceed with the trial he could not be found.

When it developed that the trial could not be conducted on January 28 the district attorney and defendant's counsel conferred for the purpose of selecting another trial day. The district attorney suggested January 29 or 30, but defendant's counsel rejected the suggestion. The district attorney then recommended February 3, but defendant's attorney had other engagements for that day. At that point it was agreed that the defendant's counsel should return to his office in Salem, consult his calendar and then send to the district attorney a list of days when he would be free to try this case. In a letter he stated that he could try the case February 20, 1958. Thereupon, the case was set for that day, and we add that it was tried on that day. If the defendant or his counsel felt that the defendant's case was meeting with unreasonable delay it is impossible to understand why counsel did not move for a dismissal instead of suggesting a trial date. By suggesting a trial date he implied that the cause would be tried and that he was aware of nothing to the contrary.

When the cause did not come to trial January 28 the court entered an order which stated:

"It appearing that both parties hereto are desirous of such a postponement, subject to the approval of the court, and the court being fully advised in the premises,

"It is hereby ordered and adjudged that the trial of the above-entitled case be and the same is hereby postponed from the January, 1958 term of court, to the February, 1958 term of court."

The defendant says that he did not consent to the postponement and seemingly that contention is the

sole basis for his motion to dismiss. The defendant, as we have seen, failed to appear before Judge Dahl January 28 when the court was ready to try the case and his counsel was unable to try the case in any of the remaining days of the January term. The defendant must have known that under those circumstances the case would not be dismissed but would be continued into the February term. The order contains no substantial mistatement.

We do not believe that Art I, § 10, Constitution of Oregon, which assures trial "without delay," and ORS 134.120, which provides for trial not later than "the next term of the court    *    *    *    unless good cause to the contrary is shown," were violated in the present instance. We have pointed out that the filing of the demurrer and the time consumed in its disposition must be deemed delay to which the defendant consented. Following the disposition of the demurrer no undue delay, chargeable to the state, occurred. The second assignment of error is without merit.

The judgment of the circuit court is affirmed.