Filed:  December 30, 2011

IN THE SUPREME COURT OF THE STATE OF OREGON

STATE OF OREGON,

Petitioner on Review,

v.


NICHOLAS RYAN RAINOLDI,

Respondent on Review.

(CC 061255770; CA A136377; SC S058846)

En Banc

On review from the Court of Appeals.*

Argued and submitted May 3, 2011.

Timothy A. Sylwester, Assistant Attorney General, Salem, argued the cause and filed the brief for petitioner on review.  With him on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Ernest G. Lannet, Chief Deputy Defender, Salem, argued the cause and filed the brief for respondent on review.  With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

LANDAU, J.

The decision of the Court of Appeals is reversed.  The judgment of the circuit court is affirmed.


*Appeal from Multnomah County Circuit Court, Frank L. Bearden, Judge. 236 Or App 129, 235 P3d 710 (2010).

1

LANDAU, J.

ORS 166.270(1) provides that any person "who has been convicted of a felony" who owns or possesses a firearm commits the crime of felon in possession of a firearm. The issue in this case is whether the statute requires proof that the defendant *knew* that he had been convicted of a felony before he possessed, or attempted to possess, a firearm. The Court of Appeals held that ORS 166.270(1) requires proof of such knowledge and that the trial court erred in failing to deliver a jury instruction to that effect. We reverse the decision of the Court of Appeals and affirm the judgment of the circuit court.

## I.    BACKGROUND

The relevant facts are few and undisputed. In 2004, defendant was convicted of two offenses: forgery in the first degree, ORS 165.013, and identity theft, ORS 165.800. Both are Class C felonies. ORS 165.013(3); ORS 165.800(2). The trial court sentenced him to 24 months' probation. On the judgment, the trial judge wrote "misd. treat. on completion of probation." Defendant completed probation in May 2006.

Several months later, defendant attended a gun show and attempted to purchase a shotgun from Keith's Sporting Goods. As part of that transaction, defendant filled out a background check form. On the form, he indicated that he had never been convicted of a felony. Using the information that defendant provided, an employee of Keith's Sporting Goods called the State Police Firearms Unit to run a background check on defendant for approval of the shotgun sale. Based on the background check, defendant's application to purchase the shotgun was denied.

2

Two police officers, Jacquot and Kulp, were also at the gun show. Dispatch notified them that defendant, a convicted felon, was attempting to purchase a firearm from Keith's Sporting Goods. The officers went to the Keith's Sporting Goods booth, spoke with the owner, and reviewed defendant's background check form. During their conversation, the owner was able to identify defendant for the officers.

The officers then contacted defendant, and the three went outside to discuss the situation. Once outside, defendant verified his identity and told the officers that he had been convicted of forgery a few years ago but that he understood the trial judge to have told him that, on completion of probation, his convictions would be reduced to misdemeanors. He explained that, because he had completed probation several months earlier, his crimes were only misdemeanors. Officer Kulp went to his patrol vehicle and ran another background check on defendant in an attempt to confirm his story. Because defendant's felony convictions still appeared on his record, the officers cited him for attempted unlawful purchase of a firearm, ORS 166.425, and attempted felon in possession of a firearm, ORS 166.270. The state then charged defendant by information with those offenses, alleging that defendant "knowingly" attempted to purchase and "intentionally" attempted to own a firearm.

Before trial, defendant requested that the trial court instruct the jury that, to find him guilty of attempted felon in possession of a firearm, the jury had to conclude that defendant knew that he was a felon at the time he attempted to purchase the shotgun. The trial court denied the request.

At trial, defendant admitted that he had attempted to purchase the firearm.

3

He further stipulated that, by virtue of his 2004 convictions, he had been convicted of a felony. He asserted that, nevertheless, he was not prohibited from purchasing or possessing a firearm because, at the time he attempted to do so, he believed that his felony convictions had been reduced to misdemeanors. In support of that assertion, he testified that the sentencing judge explained that if he completed his two-year probation period, his two felony convictions would be treated as misdemeanors. Although defendant admitted that he had no documentation that his felonies actually had been reduced to misdemeanors, he testified that he believed, at the time of the attempted purchase, that his convictions were only misdemeanors.

The jury was instructed that, among other things, to convict defendant for attempted possession of a firearm by a felon, it was required to find that defendant "knowingly attempted to possess any firearm." The jury found defendant guilty of attempted felon in possession of a firearm, but acquitted him of the remaining charge. Defendant appealed, arguing that the trial court erred in failing to instruct the jury that it had to find that defendant knew he was a felon in order to find him guilty. The Court of Appeals agreed and reversed the judgment of conviction, holding that a person's status as a felon requires proof of a culpable mental state. *State v. Rainoldi*, 236 Or App 129, 149, 235 P3d 710 (2010). The court noted that, under ORS 161.105(1), a statute defining an offense that is outside of the Oregon Criminal Code does not require proof of a culpable mental state if that statute "clearly indicates" an intention to dispense with the requirement. The court observed that the text of ORS 166.270(1)(b) "provides no indication, much less a clear indication" of an intention to dispense with proof of a

4

culpable mental state as to the element of defendant's prior felony conviction. *Id.* at 135. Likewise, the court stated, the legislative history of the statute is silent on the point. *Id.* at 136. Particularly in light of the "emphatic legislative and judicial hostility toward strict liability crimes," the court concluded, that silence is dispositive. *Id.* at 140. We accepted review of this case to determine whether that conclusion is correct.

II.     ANALYSIS

A.     *Applicable law*

The extent to which criminal liability requires proof of a particular mental state is prescribed by statute. ORS 161.095(2) provides:

> "Except as provided in ORS 161.105, a person is not guilty of an offense unless the person acts with a culpable mental state with respect to each material element of the offense that necessarily requires a culpable mental state."

By its terms, that somewhat circular requirement that there be proof of a culpable mental state for "each material element of the offense that necessarily requires a culpable mental state" applies "[e]xcept as provided in ORS 161.105." The exception to which ORS 161.095 refers provides, in part:

> "Notwithstanding ORS 161.095, a culpable mental state is not required if:
>
> "* * * * *
>
> "(b) An offense defined by a statute outside the Oregon Criminal Code clearly indicates a legislative intent to dispense with any culpable mental state requirement for the offense or for any material element thereof."

ORS 161.105(1)(b). The statutes thus impose different requirements, depending on whether the offense at issue is defined by a statute within the Oregon Criminal Code.

5

In this case, the offense at issue -- felon in possession of a firearm -- is defined by ORS 166.270. That statute is not within the Oregon Criminal Code. ORS 161.005 spells out precisely which provisions of the Oregon Revised Statutes may be cited as the "Oregon Criminal Code of 1971," commonly referred to as the "Oregon Criminal Code" without the date. *See, e.g.*, ORS 161.535; ORS 161.555; ORS 161.665 (all referring to "the Oregon Criminal Code"). ORS 166.270 is not listed as one of the statutes that may be cited as the Oregon Criminal Code.

In *State v. Rutley*, 343 Or 368, 375, 171 P3d 361 (2007), this court addressed the proper method of analysis of the extent to which an offense not within the Oregon Criminal Code requires proof of a culpable mental state as to a particular element. The court held that the analysis proceeds in the following sequence. First, it must be determined whether, under ORS 161.105(1)(b), the offense at issue "clearly indicates a legislative intent to dispense" with the mental state requirement as to the element. If the answer is yes, then the analysis is at an end. If, however, it cannot be said that the relevant statute "clearly indicates" such an intent, then the offense is treated as if it were part of the Oregon Criminal Code, subject to the requirement of ORS 161.095(2). That triggers a second determination, *viz.*, whether the particular element is a "material element of the offense that necessarily requires a culpable mental state." *Id.* at 373-75.

Under *Rutley*, then, our initial task is to determine whether the offense of felon in possession of a firearm "clearly indicates a legislative intent to dispense with any culpable mental state" for the element that the defendant "has been convicted of a felony" within the meaning of ORS 161.105(1)(b). Unfortunately, as has been noted in earlier

6

cases, the legislature has provided no guidance about how we should determine whether an offense "clearly indicates" such legislative intent. *See State v. Miller*, 309 Or 362, 366, 788 P2d 974 (1990) (so noting). In the process of applying the standard in a number of specific cases, however, this court has identified four factors that it takes into account in applying ORS 161.105(1)(b). The court has not catalogued those factors in any single decision, so we take the opportunity to do so in this case. But the list is not exhaustive; other factors may be relevant, depending on the circumstances.

The first is the text of the statute defining the offense itself. ORS 166.425(1) -- to take an example from a statute pertaining to firearms offenses -- provides that a person commits the crime of unlawfully purchasing a firearm if the person, "knowing that the person is prohibited by state or federal law from owning or possessing the firearm," attempts to purchase the firearm. Obviously, the legislature knows how to craft legislation requiring proof of a culpable mental state, and such unambiguous statements of legislative intent as that in ORS 166.425(1) ordinarily will be dispositive of the inquiry required under ORS 161.105(1)(b).

The fact that a statute does not include such an unambiguous statement of legislative intent is more problematic. On the one hand, it can be argued that legislative silence does not "clearly indicate" anything. On the other hand, such silence may give rise to an inference that, given that the legislature knows how to include a culpable mental state requirement, the omission of such a requirement was purposeful and indicates an intention to dispense with it. Because of the possibility of those competing inferences, this court has concluded that "statutory silence alone is not a sufficiently clear

7

indication of legislative intent to dispense with a culpable mental state." *Rutley*, 343 Or at 375; *see also State v. Cho*, 297 Or 195, 201, 681 P2d 1152 (1984) ("The mere enactment of a crime without an expressly required culpable mental state is insufficient to establish such a clear indication.").

On occasion, however, the court has gone further, holding that the silence of the text as to a culpable mental state, although not dispositive, is at least significant evidence of an intention to dispense with a culpable mental state. In *Miller*, for example, the issue was whether the statute that defines the offense of driving under the influence of intoxicants (DUII) requires proof that the defendant knew that he was intoxicated while driving. 309 Or at 364. That statute, ORS 813.010, which is not part of the Oregon Criminal Code, says nothing about a culpable mental state. The court found that significant. "The offense of DUII," the court observed, "does not nor has it ever required proof of a culpable mental state. The statute * * * has been amended several times. Never in the 70-year history of this state's legislation has one word been written in any DUII statute to require such proof." *Id.* at 368. The fact that the statute itself was silent on the matter, coupled with a complete absence of any discussion of it in the legislative history, held the court, "indicates a legislative intent to dispense with any culpable mental state requirement for the offense or for any of its material elements." *Id.*

Included in the examination of a statute's text is the overall structure of the law of which it is a part, which the court has held to be an important consideration under ORS 161.105(1)(b). In *State v. Buttrey*, 293 Or 575, 651 P2d 1075 (1982), for example, this court addressed whether the statute defining the offense of driving while suspended,

8

*former* ORS 487.560 (1981), *repealed by* Or Laws 1983, ch 338, § 987, required proof that the defendant knew that his or her license had been suspended. The court noted that the section of the statute that defines the offense "does not prescribe a culpable mental state." *Id.* at 582. The court noted, however, that the overall structure of the statute did clearly indicate the legislature's intentions with respect to the culpable mental state. Specifically, the court noted that the statute lists affirmative defenses, one of which, *former* ORS 487.560(2), is that the defendant did not receive notice of the suspension. *Id.* at 583. The court observed that, if the state were required to prove a defendant's knowledge of the suspension as part of its *prima facie* case, the affirmative defense of lack of notice would become "surplusage." *Id*. at 584.

A second factor on which the court has relied in its analysis under ORS 161.105(1)(b) is the nature of the element at issue. In particular, the court has stated that there is a difference, in terms of whether a culpable mental state must be proved, between elements of an offense that pertain to the conduct of the defendant and those that pertain either to the status of the defendant who engages in that conduct or to an "attendant circumstance" to the commission of the offense. The former type of element is generally regarded as the type that requires proof of a culpable mental state, while the latter is not. *Miller* provides an example of the significance of that principle in evaluating whether the statute defining the offense clearly indicates an intention to dispense with proof of a culpable mental state. After noting that the absence of any such requirement in the text of the DUII statute strongly suggested an intention to dispense with such proof, the court added the following observation about the nature of the element at issue:

9

"Having a certain [blood alcohol content] or being under the influence is a status, and a person's mental state has nothing to do with whether that status exists. The statute requires only that the state prove that a defendant had the status while driving, not that the defendant knew or should have known of it."

*Miller*, 309 Or at 369.

A third factor is the legislative history of the statute that defines the offense at issue. In *Buttrey*, for example, the court noted that, in addition to the overall structure of the statute defining the offense of driving while suspended, the legislative history made clear the legislature's intentions to dispense with proof of a culpable mental state. 293 Or at 584. The court found especially persuasive a statement from the project director of the interim committee that was responsible for the drafting of the bill that became the Oregon Vehicle Code, that "'[p]roof that [a defendant] knew of his suspension would not be an element of the offense but failure to receive notice would be an affirmative defense which would shift the burden to the defendant.'" *Id.* (quoting Minutes, House Committee on Judiciary, May 5, 1975, at 2 (statement of Donald Paillette)).

In *Miller*, the court suggested that the enactment history of a statute also may be pertinent in other ways. The court observed that the legislature had reenacted the statute defining the offense of DUII several times after it had enacted ORS 161.105(1)(b) without adding any phrasing concerning a culpable mental state. *Miller*, 309 Or at 370. That fact, the court held, "also provides a proper basis for concluding that the legislature did not intend any such mental element to apply." *Id.*

Finally, a fourth consideration in determining whether the statute defining

an offense clearly indicates an intention to dispense with proof of a culpable mental state is the purpose of the statute. If requiring proof of such a mental state could frustrate the obvious purpose of the statute, the court has held, it is highly unlikely that the legislature intended to require that proof.

Directly on point in that regard is *Rutley*, in which the issue was whether the statute that makes it unlawful to deliver certain controlled substances "within 1,000 feet of the real property comprising a public or private elementary, secondary or career school attended primarily by minors," ORS 475.904, requires proof that the defendant knew that the delivery took place within 1,000 feet of a school. The court began by observing that the statute defining the offense is outside the Oregon Criminal Code, thus triggering ORS 161.105(1)(b) and the need to determine whether the statute "clearly indicates" a legislative intent to dispense with a culpable mental state requirement as to the element in dispute. *Rutley*, 343 Or at 375. The court concluded that the purpose of the statute clearly indicated such a legislative intent:

> "Beginning with the text, we conclude that the statute evidences a clear legislative intent to give drug dealers a reason to locate the 1,000-foot school boundary and stay outside it -- by punishing the failure to do so as the most serious of crimes, a Class A felony. The statutory text leaves no doubt that the legislature intended to protect children from drug use and the violence and other negative influences that accompany drug delivery. Children are exposed to those negative influences when drugs are delivered near schools, regardless of whether the dealers know they are within 1,000 feet of a school. In our view, requiring a knowing mental state with regard to the distance element would work against the obvious legislative purpose, in that it would create an incentive for drug dealers *not* to identify schools, and *not* to take into consideration their distance from them in engaging in their illegal activity."

*Id.* at 376 (citation omitted; emphasis in original).

11

B.     *Application to this case*

With the foregoing principles in mind, we turn to the statute at issue in this case. ORS 166.270 provides, in part:

> "(1) Any person who has been convicted of a felony under the law of this state or any other state, or who has been convicted of a felony under the laws of the Government of the United States, who owns or has in the person's possession or under the person's custody or control any firearm commits the crime of felon in possession of a firearm.
>
> "* * * * *
>
> "(3) For the purposes of this section, a person 'has been convicted of a felony' if, at the time of conviction for an offense, that offense was a felony under the law of the jurisdiction in which it was committed."

Beginning with the text of that statute, we state the obvious: It says nothing about requiring a culpable mental state with respect to proving that defendant "has been convicted of a felony." As *Rutley* and other decisions make clear, that does not necessarily mean that the statute "clearly indicates" a legislative intent to dispense with such proof. 343 Or at 375. But, under *Miller*, the absence of any identifying culpable mental state suggests that the legislature intended none to apply. 309 Or at 368. To begin with, as in *Miller,* the statute at issue in this case has existed for many years (as we explain below, even longer than the statute at issue in *Miller*) without referring to a culpable mental state. Moreover, the legislature clearly knows how to include such a culpable mental state requirement, and it did just that in ORS 166.425(1), a related offense pertaining to the unlawful *purchase* of firearms. As we have noted, that statute textually provides that, to commit that offense, the defendant must purchase a firearm "*knowing* that the person is prohibited" from owning or possessing it. ORS 166.425(1)

12

(emphasis added).  The fact that the legislature did not include a similar requirement in ORS 166.270, at the very least, gives rise to an inference that the omission was purposive.  *See State v. Bailey*, 346 Or 551, 562, 213 P3d 1240 (2009) ("Generally, when the legislature includes an express provision in one statute and omits the provision from another related statute, we assume that the omission was deliberate.").

Turning to the nature of the element at issue, we note that proof that the defendant "has been convicted of a felony" refers to an established class of persons who are not permitted to possess firearms.  As such, the element refers to a status, as opposed to conduct, which ordinarily does not require proof of a culpable mental state.  As this court explained in *Miller*, a person's mental state ordinarily has nothing to do with whether a particular status exists.  309 Or at 369.

Directly addressing the nature of the element that a defendant "has been convicted of a felony," within the meaning of ORS 166.270(1), is *Bailey v. Lampert*, 342 Or 321, 153 P3d 95 (2007).  In that case, the issue was whether a conviction for felon in possession of a firearm should have been set aside because the underlying felony conviction had been overturned three years after the felon-in-possession convictions.  *Id.* at 323.  The court held that, "[t]o satisfy the elements of ORS 166.270(1), one must have been convicted of a felony and then possessed a firearm.  That is all that the statute requires * * *."  *Id.* at 325.  Because, the court explained, the statutory reference to a person who "has been convicted of a felony" was directed at a "status" at the time of possession of the firearm, what happens to that felony conviction later is irrelevant:

"Based on our analysis of the text and context of ORS 166.270, we

13

conclude that the legislature intended to, and did, focus on a person's *status at the time* that he or she possessed a firearm. The legislature determined that a person who has the status of 'felon' at that time -- even if that status later might change because the prior felony conviction is reversed or set aside -- falls within the class of persons that are not permitted to possess firearms. Under ORS 166.270(1), the predicate for the crime of felon-in-possession is the status of being a felon at the time of possession of the firearm."

*Id.* at 327 (citation omitted; emphasis in original).

The nature of the element is significant in another, related way: namely, whether a defendant's earlier conviction was a felony is a question of law. In *State v. Anderson*, 241 Or 18, 19, 403 P2d 778 (1965), the defendant had been charged with felon in possession of a firearm based on a prior conviction in another state for burglary. At trial, the state established that the defendant had pleaded guilty to attempted burglary. The defendant argued on appeal that the trial court should have ordered a directed verdict on the ground that there was a fatal variance between the predicate offense alleged and the one proven. *Id*. at 21. The court rejected the argument, explaining that "[t]he allegation of a prior conviction of a felony is only an allegation of the status of the defendant and the mere fact that the defendant had been convicted of an attempt instead of the completed offense" was irrelevant. *Id*. at 21-22.

The defendant then argued that the trial court should have entered a directed verdict because the state had failed to prove that the offense was actually a felony. *Id.* at 22. The court rejected that argument, as well, explaining that,

"[t]he law certainly does not require, in a case such as this, that the facts constituting the commission of the prior crime be established to the satisfaction of a jury. The sole question before the jury is whether or not the defendant was previously convicted of the crime of burglary or a lesser

14

included offense. It is a matter of law for the court to determine whether the crime committed constituted a felony against the property of another."

*Id. See also State v. Tippie*, 269 Or 661, 665, 525 P2d 1315 (1974) (question of whether a prior conviction was a "felony" within the meaning of felon-in-possession statute is one of legislative intent).

Ordinarily, an element that is purely a question of law is a matter for the court and does not require proof as to defendant's knowledge of that law. *State v. Langan*, 293 Or 654, 661, 652 P2d 800 (1982) ("[G]uilt does not depend on defendant's knowledge of the law."). Proof may be required of predicate facts, but the legal significance of those facts is purely for the court. *Id*. Thus, in this case, there is no dispute that the state established the fact of defendant's prior conviction. The only dispute is whether the state is required to establish that defendant was aware of the legal significance of that fact. The legal significance of the prior conviction, however, is a matter for the court.

Turning to the legislative history of ORS 166.270, we are aware of none that directly addresses whether the legislature intended proof that a defendant "has been convicted of a felony" requires a culpable mental state. Indeed, no legislative history of the enactment of the original statute exists at all, because the records literally went up in smoke with the burning of the state capitol in 1935. Nevertheless, the history of the adoption of felon-in-possession statutes in the 1920s is well understood and the purposes of those statutes not in dispute, as this court has previously recognized.

The Oregon legislature enacted its first "felon-in-possession" statute in

15

1925.  Or Laws 1925, ch 260, § 2.  That statute had its genesis in a national movement towards greater regulation of firearms in reaction to the increase in crimes committed with pistols or revolvers.  Indeed, in 1922, one report stated that "[t]he criminal situation in the United States, so far as crimes of violence are concerned, is worse than that in any other civilized country."  William B. Swaney et al., *For a Better Enforcement of the Law*, 8 ABA J 588, 590 (1922).  Some proponents went as far as arguing for a complete ban on the manufacture and sale of pistols.  *Id.* at 591.

In response, the United States Revolver Association (USRA) drafted an act for adoption throughout the country, in an attempt to provide "effective legislation which will minimize the use of pistols and revolvers by criminals, and at the same time permit law-abiding citizens to obtain such weapons for protection and other legitimate uses[.]" USRA, *The Argument for a Uniform Revolver Law* (1922), *reprinted in* Handbook of the National Conference of Commissioners on Uniform State Laws and Proceedings of the Thirty-Fourth Annual Meeting 716 (1924).  Relevant to our inquiry, section five of the USRA Act prohibited any "person who has been convicted of a felony" from possessing or controlling a pistol or revolver.  *Id.* at 728-29.  Following the USRA's lead, the National Conference of Commissioners on Uniform State Laws used that association's act as a model for its Uniform Firearms Act, which preserved the "fundamental principles" of the USRA Act -- including the ban on persons who had been convicted of a felony possessing a firearm.  Charles V. Imlay, *The Uniform Firearms Act*, 12 ABA J 767, 767 (1926).

California, in 1923, was one of the first states to adopt the USRA Act, with

16

a few modifications. *Id.*; Cal Laws 1923, ch 339, § 2. Two years later, Oregon also adopted the USRA Act, although it appears -- due to the identical wording -- that the Oregon legislature followed California's lead in deviating slightly from the wording of the act. *Compare* Cal Laws 1923, ch 339, § 2, *with* Or Laws 1925, ch 260, § 2. Both the California and Oregon laws provided:

> "[N]o person who has been convicted of a felony against the person or property of another or against the government of the United States or of the state of Oregon[/California] or of any political subdivision thereof shall own or have in his possession or under his custody or control any pistol, revolver or other firearm capable of being concealed upon the person."

Or Laws 1925, ch 260, § 2; Cal Laws 1923, ch 339, § 2.

Thus, even though there is no direct statement of the 1925 Oregon legislature's policy choices in enacting what is now ORS 166.270, there is a significant amount of contemporaneous information regarding the California law, the USRA Act, and the Uniform Firearm Act that illuminates the concerns and intentions behind the national movement to ban the possession of firearms by persons who had been convicted of a felony. *See Datt v. Hill*, 347 Or 672, 680, 227 P3d 714 (2010) (relying on history of Uniform Post-Conviction Procedure Act on which Oregon Post-Conviction Hearing Act was based); *State v. Selness/Miller*, 334 Or 515, 527, 54 P3d 1025 (2002) (referring to pre-1857 Indiana cases construing former jeopardy provision of 1851 Indiana Constitution on which Article I, section 12, of the Oregon Constitution was based).

As previously alluded to, the turn of the century saw a sharp increase in crimes, particularly involving the use of small firearms. In 1922, "over 90 per cent of the murders in this country [were] committed by the use of pistols." Swaney, 8 ABA J at

17

591. Indeed, a report by the California Crime Commission explained:

> "In a very large percentage of the serious crimes now being committed, a firearm of some sort is used. Robberies and burglaries are almost invariably committed with the aid of pistols. Guns are frequently used in murders, manslaughters, highjacking and rum-running cases. The pistol came into its own, as an effective weapon of the criminal, when the present day automobile made the fast getaway possible. Automobiles are being used not only as a means of escape but as a place from which shots are fired.
>
> "The sale of automobiles can not be regulated to keep them out of the hands of criminals, but the sale of firearms can be regulated and effectively controlled."

James A. Johnston et al., Report of California Crime Commission 20 (1929).

With those concerns in mind, states began enacting statutes regulating the sale and possession of firearms and, in response to a call for uniformity, the USRA Act and the Uniform Firearms Act were drafted. Imlay, 12 ABA J at 767. One of the key provisions in those statutes and proposed uniform laws was that "[o]ne convicted in a state of a crime of violence [was] absolutely forbidden to own or possess a pistol or revolver." *Id.* at 768.

> "The justification for the section is the protection afforded by prohibiting the possession of pistols to men who are liable to use them in a way dangerous to society. Experience has shown that crimes of violence are much more likely to be committed by men who have previously been convicted of such offenses."

Sam B. Warner, *The Uniform Pistol Act*, 29 Am Inst Crim L & Criminology 529, 538 (1939). Indeed, a newspaper article reporting the enactment of the California statute stated that the law was "[a]imed at disarming the lawless." *New Firearms Law Effective on August 7*, SF Chron, July 15, 1923, at 3.

Early cases interpreting the California firearm law echoed those concerns:

> "The purpose of the act is to conserve the public welfare, to prevent any interference with the means of common defense in times of peace or war, to insure the public safety by preventing the unlawful use of firearms. It cannot be assumed that the Legislature did not have evidence before it, or that it did not have reasonable grounds to justify the legislation, as, for instance, that * * * persons who have been convicted of a felony were more likely than citizens to unlawfully use firearms or engage in dangerous practices against the government in times of peace or war, or to resort to force in defiance of law. To provide against such contingencies would plainly constitute a reasonable exercise of the police power."

*In re Rameriz*, 193 Cal 633, 650, 226 P 914 (1924). Similarly, in another California decision, the court held

> "The danger to the public safety from the indiscriminate carrying of deadly weapons, especially by persons who are criminally inclined, is a matter of common knowledge, and, as justifying the regulation of the practice thereof by the state in the exercise of its police power[.]"

*People v. McCloskey*, 76 Cal App 227, 229, 244 P 930 (1926).[1]

This court has recognized that Oregon's felon-in-possession statute was

---

[1] Whether felon-in-possession statutes require proof of a culpable mental state as to the defendant having a prior felony conviction has been addressed in a number of cases in other jurisdictions. Every court -- state and federal -- that has considered the question has concluded that no such proof is required. *See, e.g.*, *U.S. v. Gardner*, 488 F3d 700, 715-16 n 2 (6th Cir 2007) ("[C]ourts tend to agree that the government need not establish that the defendant knew of *his own* felony status." (Emphasis in original.)); *People v. DeWitt*, ___ P3d ___, 2011 WL 4089974 (Colo App 2011) ("[I]t is clear to us that the General Assembly did not intend for the express mental state of 'knowingly' in the amended * * * statute to apply to the prior felony conviction element of the offense."); *Rhone v. State*, 825 NE 2d 1277, 1286 (Ind App 2005) (Indiana felon-in-possession statute "does not require proof that [defendant] knew he was a serious violent felon"); *Branch v. Commonwealth*, 42 Va App 665, 669, 593 SE2d 835 (2004) (Virginia felon-in-possession statute does not "contain a *scienter* or *mens rea* element for a conviction under that statute" (emphasis in original)).

adopted with the same policy in mind. In *State v. Robinson*, 217 Or 612, 614, 343 P2d 886 (1959), the defendant was convicted of violating ORS 166.270. On appeal, he challenged the constitutionality of the statute under, among other things, the Equal Protection Clause of the Fourteenth Amendment. The court rejected the challenge, explaining that the purpose of the statute was clear and legitimate: "A firearm of the kind described in ORS 166.270 is plainly dangerous, especially if possessed by one whose past conduct revealed a disregard for law and the normal moral restraints." *Id.* at 616. The legislature, in drafting that act, the court said, was concerned with, among other things, "those whose past conviction of a felony showed an unsocial attitude." *Id.* at 616. According to the court, "[t]he legislature evidently believed that ex-convicts who possess firearms of the kind described in ORS 166.270 are more likely to commit evil * * *." *Id.* The court explained:

> "By his own felonious conduct he classifies himself and places himself in a category different from that composed of the law abiding. When the legislature concludes that a person of that kind can not be trusted with a concealable weapon we surely can not say that its decision lacks reason."

*Id.* at 617. Similarly, in *Tippee*, the court stated that it is clear that "[t]he legislature made a decision that a person convicted of a felony is such a great potential danger that he should not be permitted to carry a concealable weapon." 269 Or at 665.

Clearly, then, the underlying policy of ORS 166.270 is that persons who have been convicted of a felony pose a risk to the public. That risk exists regardless of a person's knowledge of the legal significance of the conviction. Said another way, whether or not a given defendant is aware of the legal significance of a prior felony

20

conviction, the risk to the public remains the same. Under the circumstances, it makes no sense to require proof of the defendant's knowledge of the legal significance of the prior conviction. To the contrary, requiring such proof would frustrate the purpose of the statute.

In short, the usual indicators that this court has considered relevant under ORS 161.105(1)(b) all indicate the legislature's clear intent to dispense with proof of a culpable mental state with respect to whether a defendant "has been convicted of a felony" under ORS 166.270(1).

Defendant insists that the fact that ORS 166.270(1) does not specify a culpable mental state with respect to proof that a defendant "has been convicted of a felony" establishes conclusively that the statute does not provide the sort of clear intention that ORS 161.105(1)(b) requires in order to dispense with such proof. According to defendant, the legislature's silence on the matter should be regarded as conclusive because of the strong policy against criminal liability without fault and because the possession of firearms is otherwise constitutionally protected activity. The Court of Appeals similarly reasoned that, in light of the "emphatic legislative and judicial hostility toward strict liability crimes," the silence of the statute is conclusive. *Rainoldi*, 236 Or App at 140.

That reasoning fails on at least three grounds. To begin with, it cannot be reconciled with the case law that we have described, which recognizes that, although the legislature's failure to expressly require proof of a culpable mental state with respect to a particular element may not be conclusive evidence that it intended to dispense with such

21

proof, *Rutley*, 343 Or at 375, it may in some cases strongly suggest such a clear intent, *Miller*, 309 Or at 368. Defendant cites *Rutley*, but asserts that it stands for the proposition that a statute's "silence is not an indication of a legislative intent to dispense with a culpable mental state." That is incorrect. What *Rutley* says is that "statutory silence alone is not a sufficiently clear indication of legislative intent to dispense with a culpable mental state," 343 Or at 375, which is a different point altogether.

Aside from that, the argument is built on a false premise, namely, that a statute that imposes criminal liability without proof of a culpable mental state as to each and every element of an offense imposes liability without fault. Merely because proof of a culpable mental state is not required as to a single element does not mean that the statute defining the offense imposes liability without fault. The court considered a similar proposition in *State v. Irving*, 268 Or 204, 520 P2d 354 (1974). At issue in that case was the extent to which *former* ORS 167.232 (1971), *repealed by* Or Laws 1977, ch 745, § 54, which prohibited the fraudulent sale of imitation drugs to a peace officer, required proof that the defendant knew that the one to whom the imitation drugs were sold was, in fact, a peace officer. *Id.* at 205. The Court of Appeals concluded that the statute must be read to require such proof, in order to avoid imposing criminal liability without fault. This court reversed, holding that, although the text of the statute said nothing about a culpable mental state, the legislative history established that no such proof is required. *Id*. at 206. As for the concern that such a holding creates criminal liability without fault, the court responded that "[o]ur interpretation does not render ORS 167.232 a crime 'without fault.' Conviction still depends on establishing that the

22

defendant fraudulently misrepresented the substances he sold, which in itself constitutes knowingly culpable behavior." *Id*. at 207.

In this case, merely because it is not necessary to prove that defendant knew that he had been convicted of a felony does not mean that it is not necessary to prove a culpable mental state with respect to other elements of the offense or that he is strictly liable for his attempted possession of a firearm. In that regard, we note that the state alleged that he "knowingly" and "intentionally" attempted to purchase and possess a firearm, and the jury was instructed in accordance with those allegations. In any event, the fact that that the legislature has stated a policy against imposing strict criminal liability does not necessarily mean that, in a given case, the relevant factors -- including the silence of the statutory text -- do not provide a clear indication to do just that, as *Miller* makes clear. 309 Or at 368 (concluding that, although the statute defining the offense of DUII and its legislative history were silent as to a culpable mental state, it was nevertheless clear that the legislature intended to create a strict liability offense).

Finally, defendant is mistaken that failing to impose a culpable mental state requirement in this case raises constitutional questions. He cites no case law supporting that assertion. And the pertinent authority appears to be to the contrary. In *State v. Hirsch/Friend*, 338 Or 622, 625, 114 P3d 1104 (2005), this court upheld the constitutionality of ORS 166.270 as against a challenge that it violated a convicted felon's state constitutional right to bear arms. Nothing in the court's decision suggested that the constitutionality of the statute depended on the convicted felon's knowledge of the legal consequences of the prior conviction.

23

## III.    CONCLUSION

In summary, based on the multiple indicators discussed above, ORS 166.270 exhibits a clear legislative intent to dispense with the culpable mental state requirement as to the element that a defendant "has been convicted of a felony."  Because we conclude that the legislature's intentions are clear in that regard, it is not necessary for us to examine whether proof of a culpable mental state is required under ORS 161.095(2).  The trial court did not err in denying defendant's request that it instruct the jury that it could not convict defendant unless it found that he knew he was a felon at the time he attempted to purchase the shotgun.

The decision of the Court of Appeals is reversed.  The judgment of the circuit court is affirmed.