Argued and submitted September 13, 2018, affirmed August 19, 2020, petition for review denied February 4, 2021 (367 Or 535)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

CRAIG ANDREW KRIEGER,
*Defendant-Appellant.*

Lane County Circuit Court
211020252; A163710

473 P3d 550

In this criminal case, defendant assigns error to the denial of his motion to dismiss for lack of a speedy trial, arguing that the six-year pretrial delay violated his state and federal constitutional rights to a speedy trial. Defendant also argues that the delay violated his statutory right to a speedy trial and that the trial court erred in concluding that the exemption in ORS 135.748(1)(c) applied, because the phrase "fails to appear" applies only to voluntary absences and not absences that are a result of a defendant's inability to appear. *Held*: Defendant's rights under Article I, section 10, of the Oregon Constitution and his rights under the Sixth Amendment to the United States Constitution were not violated. With respect to defendant's statutory argument, because the text, context, and legislative history of ORS 135.748(1)(c) does not reveal that the legislature intended to require a voluntary act, the trial court did not err in rejecting defendant's statutory speedy-trial claim.

Affirmed.

Karrie K. McIntyre, Judge.

Sara F. Werboff, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Jeff J. Payne argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Ortega, Presiding Judge, and Egan, Chief Judge, and Powers, Judge.*

POWERS, J.

Affirmed.

_____
* Egan, C. J., *vice* Garrett, J. pro tempore.

**POWERS, J.**

In this criminal case, defendant appeals from a judgment of conviction for driving under the influence of intoxicants (DUII), ORS 813.010, and giving false information to a police officer, ORS 162.385. Defendant assigns error to the trial court's denial of his motion to dismiss for lack of a speedy trial. Defendant argues that the six-year pretrial delay violated both his statutory right to a speedy trial, and his state and federal constitutional rights to a speedy trial. For the reasons explained below, we hold that the trial court did not err in denying defendant's motion to dismiss and, accordingly, we affirm.

We review a trial court's denial of a defendant's motion to dismiss for lack of a speedy trial for legal error and we are bound by the trial court's findings of fact if they are supported by the record. *State v. Johnson*, 342 Or 596, 608, 157 P3d 198 (2007), *cert den*, 552 US 1113 (2008). A trial court's factual findings "concerning the length and reasons for the delay, as well as the type, level, and cause of any anxiety that defendant suffered, are binding if supported by evidence." *Id*. Whether those factual findings support constitutional or statutory speedy-trial violations presents a question of law. *See State v. Rohlfing*, 155 Or App 127, 129, 963 P2d 87 (1998) (reviewing for errors of law a statutory speedy-trial challenge under *former* ORS 135.747 (1997)); *Johnson*, 342 Or at 608 (reviewing for errors of law under a constitutional speedy-trial challenge). We state the undisputed facts consistent with those standards.

In August 2010, defendant was stopped and cited for DUII and giving false information to a police officer. Both citations ordered defendant to appear in court on September 10, 2010. However, at the time defendant was stopped for a DUII there was a New York warrant for defendant's arrest on a second-degree assault charge. Based on that warrant, the officers arrested defendant, he waived extradition on the warrant, and defendant was extradited to New York.[1] On September 9, the day before he was scheduled to appear

---

[1] At the time, defendant was also subject to a warrant from Georgia. The record, however, does not indicate that any action was taken on that warrant.

in court, the state charged defendant by information with misdemeanor DUII and two counts of giving false information to a police officer. As a result of his extradition, defendant was not present for his arraignment on September 10, and, because he failed to appear as directed by the citations, the trial court issued a bench warrant. *See* ORS 133.060(2) (authorizing a trial court to issue a warrant when a defendant fails to appear as directed by a criminal citation).

In January 2012, defendant sent a letter to the Lane County Circuit Court explaining that he was incarcerated in New York with an expected release date in August 2013. In his letter, defendant asked whether he could resolve his pending Oregon case with a pre-plea offer or a telephonic appearance. Defendant received no response. In July 2012, defendant wrote a second letter to the trial court and again requested a pre-plea disposition. Defendant informed the court that he had "no objection to pleading guilty by mail," and further requested "that the Judge lift the warrant." There is no record that the trial court ever responded to defendant's letters. The record does not contain any information about defendant's whereabouts after his presumed release from incarceration in New York sometime in August 2013, however, defendant was arrested on the Oregon warrant in August 2016.

Before trial, defendant filed a motion to dismiss this case on speedy trial grounds, asserting his rights under ORS 135.746,[2] the state constitutional right to a speedy trial embodied in Article I, section 10, of the Oregon Constitution,[3] and his rights secured by the Sixth Amendment to the United States Constitution.[4] He argued that the six-year

---

[2] ORS 135.746 provides, in part:

"(1) Except as provided in ORS 135.748:

"(a) A trial in which the most serious charge alleged in the charging instrument is designated by statute as a misdemeanor must commence within two years from the date of the filing of the charging instrument."

[3] Article I, section 10, provides that, "No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

[4] The Sixth Amendment provides, in part, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]"

delay in prosecuting him violated ORS 135.746(1)(a) and that the delay was caused by the state because it failed to file a detainer to prevent defendant's extradition.[5] Defendant also argued that the length of the delay was excessive and that he was prejudiced by the delay under both the state and the federal constitutions. In response, the state argued that the time between defendant's arraignment in 2010 and when he was served with the bench warrant in 2016 was excluded from the two-year period required by ORS 135.746(1)(a) by operation of ORS 135.748(1)(c).[6] Regarding defendant's constitutional arguments, the state argued that the delay was not excessive, that defendant caused the delay, and that defendant did not show prejudice.

The trial court denied defendant's motion in a written order concluding:

"THE COURT FURTHER FINDS that ORS 135.748 (1)(c) applies, and thus the commencement of trial was timely under ORS 135.746.

"THE COURT FURTHER FINDS that neither the Defendant's State nor Federal Constitutional rights to [a] speedy trial have been violated by the delay on the record herein."

(Uppercase in original.) After a stipulated facts trial, the court found defendant guilty, and defendant subsequently filed this appeal.

On appeal, defendant renews his arguments that the six-year delay in prosecution violated his statutory right to a speedy trial, as well as his state and federal constitutional rights to a speedy trial. Generally, we would

_____

[5] Defendant also argued that ORS 135.748(1)(c) applies only after the trial court sets a trial date; however, defendant does not renew that argument on appeal, and we therefore do not address it.

[6] ORS 135.748(1)(c) provides:

"(1)  All applicable periods of elapsed time as follows are excluded from the time limits described in ORS 135.746:

"* * * * *

"(c)  A period of time between a scheduled court appearance at which the defendant fails to appear and the next scheduled court appearance other than an appearance that occurs for the purpose of addressing a warrant resulting from the defendant's failure to appear."

address—as a prudential matter—the statutory challenge before reaching either of the constitutional issues to resolve the case on the narrowest ground possible. *See, e.g.*, *Dept. of Rev. v. River's Edge Investments, LLC*, 359 Or 822, 836, 377 P3d 540 (2016) (citing Wallace P. Carson, Jr., *"Last Things Last": A Methodological Approach to Legal Argument in State Courts*, 19 Willamette L Rev 641, 643-45, 654 (1983) (advocating for a legal analysis in sequence beginning with administrative rules, then statutes, then state constitution, then federal law, then federal constitution)). For speedy trial claims, however, we reverse that usual order of analysis and address constitutional claims before statutory claims given the difference in remedy. *See Johnson*, 342 Or at 606 (explaining that "[w]e do so because a defendant who prevails on a constitutional speedy trial claim is entitled to dismissal with prejudice," whereas a defendant who prevails on a statutory speedy trial claim "is entitled only to dismissal without prejudice").[7]

We address defendant's state constitutional claim first. *See, e.g.*, *State v. Velykoretskykh*, 268 Or App 706, 707 n 2, 343 P3d 272 (2015) ("Under Oregon court's 'first things first' doctrine, we have an obligation to address state constitutional law claims before federal ones."). Under Article I, section 10, we consider three factors in evaluating a speedy trial claim: (1) the length of the delay; (2) the reasons for the delay; and (3) the resulting prejudice to the defendant. *State v. Mende*, 304 Or 18, 21, 741 P2d 496 (1987). "The first factor—the length of the delay—'serves as a triggering mechanism. If the time taken to bring an accused to trial is substantially greater than the average, inquiry into the remaining two factors is triggered.'" *State v. Chelemedos*, 286 Or App 77, 81, 398 P3d 415, *rev den*, 362 Or 208 (2017) (quoting *Mende*, 304 Or at 23-24). If, however, "the delay is

---

[7] Although the court in *Johnson* analyzed an earlier version of the speedy trial statute, *former* ORS 135.747 (2011), *repealed by* Or Laws 2013, ch 431, § 1, the same principles for discussing defendant's constitutional claims first are still applicable. That is, like its predecessor, a violation of the speedy trial statute, ORS 135.746, results in a dismissal without prejudice. *See* ORS 135.752 ("If a trial is not commenced as required by ORS 135.746, the court shall order the charging instrument to be dismissed without prejudice unless the court finds on the record substantial and compelling reasons to allow the proceeding to continue.").

manifestly excessive and unreasonable such that it shocks
the imagination and conscience, the delay is presump-
tively prejudicial," and establishes an Article I, section 10,
speedy-trial violation, regardless of the other two factors.
*Id.* (internal quotation marks omitted). Where there is no
presumptively prejudicial delay, a defendant may demon-
strate prejudice to warrant the remedy of dismissal of the
charges in three ways: (1) excessive pretrial detention,
(2) anxiety and concern, or (3) impairment of the defense.
*State v. Tiner*, 340 Or 551, 557, 135 P3d 305 (2006), *cert den*,
549 US 1169 (2007). With respect to the third type of prej-
udice, a "defendant must show that the delay caused a rea-
sonable possibility of prejudice to the defendant's ability to
prepare a defense." *Id.* at 555; *see also State v. Ivory*, 278 Or
499, 508, 564 P2d 1039 (1977) ("We conclude that in cases
where inquiry into impairment of defense is necessary, it
would be harsh to require proof with certainty. It is suffi-
cient to show only a reasonable possibility of prejudice[.]").

        As an initial matter, defendant does not assert that
the six-year delay was presumptively prejudicial. *State v.
Harman*, 179 Or App 611, 615, 40 P3d 1079 (2002) (holding
that the five-year, seven-month delay in bringing the defen-
dant to trial on a DUII charge "was not so shockingly long
that dismissal is required" without looking at the other fac-
tors). Thus, we examine the remaining two factors, *viz.*, the
reasons for the delay and the prejudice to defendant created
by the delay.

        Defendant asserts that the delay was substantially
longer than average, not attributable to him, because he had
no practical ability to return to Oregon to face the charges,
and that he was prejudiced by the delay. He acknowledges
that he was released from incarceration in 2013 and was
aware of the Oregon charges, but argues that the state took
no action to procure his attendance in court. Even assuming
defendant is correct that some length of the delay in this
case can be attributed to the state, we disagree that defen-
dant established a significant degree of prejudice to war-
rant dismissal. *See Johnson*, 342 Or at 607 ("In determining
whether a defendant's constitutional right to a speedy trial
has been impaired sufficiently to warrant dismissing the

charges against him or her, a court also must consider the prejudice to the defendant.").

Defendant's arguments concerning prejudice are narrow. He does not assert that excessive pretrial detention on these charges caused prejudice and he does not claim impairment of his defense. Rather, defendant contends that he suffered stress and anxiety as a result of the delay. His generalized argument of stress and anxiety is not supported by any evidence beyond that expected in the resolution of any criminal charge. *See State v. Dykast*, 300 Or 368, 378, 712 P2d 79 (1985) (noting that "[m]ost criminal prosecutions cause stress, discomfort and interference with a normal life"). Without establishing the necessary prejudice, we cannot conclude that defendant's rights were violated under Article I, section 10. *See State v. Bayer*, 229 Or App 267, 281, 211 P3d 327, *rev den*, 347 Or 446 (2009) (concluding that, even if the delay was "substantially greater than average," the defendant did not demonstrate sufficient prejudice to warrant dismissal). Accordingly, after evaluating the length of delay with both the reason for the delay and the prejudice to defendant, we reject his state constitutional claim.

Given our conclusion under Article I, section 10, we similarly conclude that defendant's rights under the Sixth Amendment were not violated. In assessing a speedy trial claim under the Sixth Amendment, "a court considers the three factors relevant to the state constitutional analysis (length of the delay, reasons for the delay, and the prejudice that results from the delay) and also the defendant's diligence in asserting the right to a speedy trial." *Bayer*, 229 Or App at 281-82. Here, we conclude that the additional reason—defendant's lack of diligence in attempting to resolve the warrant after he was released from custody— weighs against any Sixth Amendment speedy-trial violation. Although defendant did write to the trial court in an attempt to resolve his case while he was incarcerated, it is undisputed that defendant took no action to assert his right to a speedy trial upon his presumed release in August 2013. That three-year delay between his release and his arrest on the Oregon warrant weighs heavily against concluding that there was a federal constitutional violation. Therefore,

in addition to the absence of prejudice to defendant, we conclude that the state did not violate defendant's Sixth Amendment right to a speedy trial.

Having addressed defendant's state and federal constitutional speedy-trial claims, we turn to his statutory claim. ORS 135.746(1)(a) mandates that, "[e]xcept as provided in ORS 135.748," a trial for a misdemeanor offense "must commence within two years from the date of the filing of the charging instrument." In turn, ORS 135.748 excludes the period of time between a defendant's scheduled court appearances:

"(1)   All applicable periods of elapsed time as follows are excluded from the time limits described in ORS 135.746:

"* * * * *

"(c)   A period of time between a scheduled court appearance at which the defendant fails to appear and the next scheduled court appearance other than an appearance that occurs for the purpose of addressing a warrant resulting from the defendant's failure to appear."

Therefore, the period of time between a defendant's failure to appear at a scheduled court appearance and the next scheduled court appearance is not counted toward the two-year statutory time limit in ORS 135.746(1)(a).

Defendant argues that the trial court erred in concluding that ORS 135.748(1)(c) applied because he was incarcerated in New York and had no practical ability to appear in Oregon. Specifically, defendant contends that, according to the text, context, and legislative history of ORS 135.748 (1)(c), the phrase "fails to appear," for purposes of tolling the speedy-trial time limit applies only to voluntary absences and not absences—like defendant's—that are the result of a defendant's inability to appear. Defendant asserts that "failure to appear" is a legal term, that occurs when a litigant "is absent from a proceeding without explanation or excuse." Thus, according to defendant, "fails to appear," "requires that the nonappearance, at a minimum, be the result of a voluntary act on the part of the defendant."

In response, the state first argues that defendant's argument regarding ORS 135.748(1)(c) is unpreserved. Further,

even if it is sufficiently preserved, the text, context, and legislative history of ORS 135.748(1)(c) does not require a "voluntary" act. In particular, the state notes that, "other sections of ORS 135.748 explicitly require an intentional or deliberate act by a defendant whereas ORS 135.748(1)(c) does not." Additionally, the state argues that the statute's legislative history refutes defendant's interpretation of the statute.

Before turning to the merits of the parties' dispute, we first address preservation. *See Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008) (explaining the prudential principles underlying the preservation requirement, which include giving "a trial court the chance to consider and rule on a contention, thereby possibly avoiding an error altogether or correcting one already made, which in turn may obviate the need for an appeal"). The state remonstrates that defendant did not advance before the trial court the argument that he now asserts on appeal regarding ORS 135.748(1)(c) requiring a "voluntary" act. Indeed, neither party focused their arguments precisely on the statutory interpretation of ORS 135.748(1)(c) before the trial court. In responding to defendant's motion to dismiss, however, the state argued that the proper application of ORS 135.748(1)(c) foreclosed defendant's speedy trial claim. Thus, the correct interpretation of ORS 135.748(1)(c) certainly was before the trial court, and indeed the trial court specifically ruled on the applicability of that provision. Accordingly, we conclude that defendant's statutory argument is sufficiently preserved. *See State v. Robinson*, 288 Or App 194, 199, 406 P3d 200 (2017) (considering the defendant's new statutory arguments on appeal even though the "defendant's arguments to the trial court did not give that court the opportunity to consider the precise interpretation of [the statute] that defendant presse[d] on appeal"). Further, when construing a statute, we are "responsible for identifying the correct interpretation, whether or not asserted by the parties." *Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997).

Accordingly, we turn to the merits. As outlined above, defendant asserts that, for that time to be excluded under ORS 135.748(1)(c), a defendant's failure to appear in court must be voluntary and not because of a defendant's "physical inability to appear." Defendant does not assert

that the legislature intended the phrase "fails to appear" to require a culpable mental state such as knowingly; rather, defendant asserts that the legislature intended the phrase to encompass a voluntary act.[8]

That argument presents a question of statutory interpretation: When a defendant "fails to appear" for a scheduled court proceeding as that phrase is used in ORS 135.748(1)(c), must that failure be "voluntary" for the elapsed time to be excluded from the time limit in ORS 135.746? To ascertain the meaning of ORS 135.748(1)(c), we determine the legislature's intent by examining the text, context, and any pertinent legislative history. *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (explaining the statutory interpretation framework). In construing the text of a statute, we do not "insert what has been omitted" or "omit what has been inserted." ORS 174.010.

The phrase "fails to appear" is not defined by statute, therefore, we presume that the legislature intended the plain meaning of the phrase. *State v. Gonzalez-Valenzuela*, 358 Or 451, 460, 365 P3d 116 (2015) ("Without a statutory definition, 'we ordinarily look to the plain meaning of a statute's text as a key first step in determining what particular terms mean.'" (Quoting *Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 295, 337 P3d 768 (2014).)). The term "fail" has two relevant definitions: (1) "to neglect to do something **:** leave something undone **:** be found wanting in not doing something" and (2) "to leave some possible or expected action unperformed or some condition unachieved." *Webster's Third New Int'l Dictionary* 814 (unabridged ed 2002). Both definitions define "fail" as falling short of an action that is anticipated to be achieved; however, neither definition appears to suggest whether that failure be voluntary or involuntary. The applicable definition of "appear" is "to come formally

---

[8] As we understand defendant's argument, defendant would import the voluntariness requirement to ORS 135.748(1)(c), but not the culpable mental state requirement in criminal liability statutes. *See* ORS 161.095 (to impose criminal liability, a person must perform "conduct which includes a voluntary act or the omission to perform an act which the person is capable of performing" and act with a "culpable mental state"). A voluntary act in turn is defined as "a bodily movement performed consciously." ORS 161.085(2). Thus, defendant argues that ORS 135.748(1)(c) requires a "bodily movement performed consciously," but does not require a culpable mental state.

before an authoritative body." *Id*. at 103. Read together, the phrase "fails to appear" in ORS 135.748(1)(c) simply means that the defendant did not show up at a scheduled court appearance. Further, there is nothing about the ordinary meaning of "fails to appear" that suggests that the legislature intended for it to require a voluntary act on the part of the defendant.

Defendant also argues that "failure to appear" is a legal term of art, citing a definition in *Black's Law Dictionary*. We are not persuaded. First, as defendant acknowledges, the entry for "failure to appear" and the cross-reference to "nonappearance" does not appear in the edition of the *Black's Law Dictionary* that was available at the time the legislature enacted ORS 135.748.[9] Given that temporal difficulty, the definition in *Black's Law Dictionary* cannot shed light on what the legislature intended when it enacted ORS 135.748 (1)(c). *See State v. Clemente-Perez*, 357 Or 745, 763, 359 P3d 232 (2015) ("We consult dictionaries in use at the time of the legislature's enactment as an aid in interpreting the words of the statute."). Second, and more fundamentally, although the phrase "failure to appear" has an entry in a legal dictionary, that fact alone does not mean that the legislature intended the phrase "fails to appear" to carry a specialized meaning as a term of art. The entry for "failure to appear" is cross-referenced to the definition of "nonappearance," which in turn, is defined as a "party's unexplained and unexcused absence from a proceeding before a tribunal despite being summoned[.]" *Black's Law Dictionary* 713, 1212 (10th ed 2014). There is nothing about that entry or the definition of "nonappearance" that suggests, much less demonstrates, that the legislature intended ORS 135.748(1)(c) to carry a voluntariness requirement when considering whether a defendant "fails to appear" at a scheduled court appearance.

Defendant's argument does not fare any better when looking at the statute's context. Context includes other provisions of the same statute, as well as related statutes.

---

[9] The entry for "failure to appear" does not appear until the tenth edition of *Black's Law Dictionary*, which was released in May 2014. The legislature enacted ORS 135.748 several months earlier in March 2014. Defendant acknowledges that the earlier edition of *Black's Law Dictionary* is "less useful than the current version," but maintains that it does not refute his argument.

*Northwest Natural Gas Co. v. City of Gresham*, 359 Or 309, 322, 374 P3d 829 (2016). As explained below, the context of ORS 135.748(1)(c) also does not support defendant's interpretation that the legislature intended to require a voluntariness requirement in ORS 135.748(1)(c).

First, although some exclusions appear to require a "voluntary act," other exclusions do not impose a voluntariness requirement. *Compare* ORS 135.748(1)(d) ("defendant is outside this state and resists being returned to this state for trial"); *and* ORS 135.748(1)(e)(A) ("defendant's location is unknown" and defendant "has attempted to avoid apprehension or prosecution"); *with* ORS 135.748(1)(a)(D) (defendant is "[u]nable to appear by reason of illness or physical disability"). Thus, what the foregoing shows is that, if the legislature had intended a defendant's failure to appear for purposes of ORS 135.748(1)(c) to include a voluntary act, it knew how to so indicate but chose not to do so.

Second, although ORS 135.748(1)(f) could be read to be supportive of defendant's argument, it would require us to rely on legislative silence, which generally is not dispositive. In ORS 135.748(1)(f), the legislature intended to exclude the period of time in which a "defendant is on trial or engaged in court proceedings in an unrelated matter, whether in the same court or a different court, and was therefore physically unavailable for trial." On one hand, the inclusion of the phrase "physically unavailable" in subsection (1)(f) suggests that the absence of a similar phrase in ORS 135.748(1)(c) signals that the legislature knew how to specifically address whether a defendant was physically available or unavailable for purposes of the speedy trial statute. Thus, the exclusion of similar language in ORS 135.748(1)(c) could suggest that the legislature did not intend for that statute to capture situations where a defendant was "physically unavailable" to appear in court. On the other hand, we are appropriately cautious in reading too much into the legislature's silence on a defendant being "physically unavailable" or voluntariness in ORS 135.748(1)(c). *See State v. Rainoldi*, 351 Or 486, 492, 268 P3d 568 (2011) (noting that because legislative silence can give rise to competing inferences—that the legislature did not intend anything in particular, or that the omission was purposeful—it is generally not a dispositive indicator of

intent). Thus, although ORS 135.748(1)(f) could lend support to defendant's argument, we cannot conclude without more that it fully addresses the legislature's intent on whether ORS 135.748(1)(c) requires a voluntary act.

Third, the statute authorizing a trial court to issue a warrant when a defendant does not appear as required by a criminal citation further provides context to the interpretation of ORS 135.748(1)(c) because it contains similar language. ORS 133.060(2) provides:

> "If the cited person fails to appear at the time, date and court specified in the criminal citation, and a complaint or information is filed, the magistrate shall issue a warrant of arrest, upon application for its issuance, upon the person's failure to appear."

Like ORS 135.748(1)(c), there is no textual indication that the legislature intended the phrase "fails to appear" to contain a voluntariness requirement. Importantly, however, if defendant's argument were correct that the phrase "fails to appear" encapsulates a voluntariness requirement, such an interpretation would curtail a trial court's ability to issue warrants when a defendant does not show up in court as required by a criminal citation. The more natural reading, however, is that a trial court is not required to make an inquiry into the voluntariness of the defendant's failure to be present in court before issuing a warrant under ORS 133.060(2). That reading, then, appears consistent with the interpretation that does not require voluntariness for purposes of the speedy trial exemption in ORS 135.748(1)(c). In both instances, it is the fact of the defendant's nonappearance that matters without regard to the circumstances— such as voluntariness or involuntariness—that form the basis of that nonappearance.[10]

---

[10] To the extent that defendant's argument relies on the criminal liability statutes—such as ORS 162.195 (failure to appear in the second degree); ORS 162.205 (failure to appear in the first degree); ORS 164.845 (arrest for unauthorized cutting or transport of trees)—all of which utilize the phrase "fails to appear" to criminalize the failure to appear in court, we conclude that those statutes do not provide persuasive context for how the legislature intended to define "fails to appear" in ORS 135.748(1)(c). Unlike in the speedy trial statutes, the legislature explicitly stated in ORS 161.095 that for criminal liability statutes "[t]he minimal requirement for criminal liability *** includes a voluntary act." There is no equivalent textual mandate in ORS 135.748.

Finally, a review of the legislative history supports an interpretation that voluntariness is not a requirement of the phrase "fails to appear" as it is used in ORS 135.748 (1)(c). As we explained in *State v. McGee*, 295 Or App 801, 807 n 5, 437 P3d 238, *rev den*, 365 Or 194 (2019):

> "The Oregon Department of Justice (DOJ) and Oregon Criminal Defense Lawyers Association (OCDLA) worked together to enact the new speedy-trial statutes. *See* Testimony, Senate Committee on Judiciary, SB 1550, Feb 13, 2014 (statement of OCDLA representative Gail L. Meyer). Both DOJ and OCDLA testified that the speedy-trial law would exempt *all* delays caused by defendants. *See id.* * * *"

(Emphasis in original.) Notably, DOJ and OCDLA agreed that, "[i]f the accused were to be responsible for delays, whether intentionally or not, the bright-line timeframe is tolled during that period." Testimony, Senate Committee on Judiciary, SB 1550, Feb 13, 2014 (statement of OCDLA representative Gail L. Meyer). In other words, even if a defendant did not intentionally cause the delay, the applicable period of time is nonetheless excluded. Defendant argues that the legislature's use of "intentionally," addresses only whether the legislature "intended to require 'intentional' conduct on the part of a defendant," and does not address whether the legislature intended to require a voluntary act. We decline to read the legislative history that narrowly. Both DOJ and OCDLA classify a defendant's failure to appear for a court proceeding broadly, as a delay caused by a defendant, that— regardless of the reason—is excluded from the time limit. *See* Testimony, Senate Committee on Judiciary, SB 1550, Feb 24, 2014 (statement of DOJ Legislative Director Aaron Knott) ("Any time caused by the defendant is not counted against the two or three year time period. Exclusions include those caused by a failure to appear * * *."). The legislative history indicates that the legislature contemplated instances where a defendant may not necessarily be at fault for the delay— such as when a defendant is "[u]nable to appear by reason of illness or physical disability," or when a "defendant's location is unknown" and "cannot be determined"—but the legislature chose to equally exclude all delays caused by defendant. ORS 135.748(1)(a)(D), (1)(e)(B). Furthermore, the legislative

history does not suggest either a voluntariness requirement or that the legislature was using a term of art when discussing what it means when a defendant "fails to appear" in this context.

In short, although the delay in this case is substantially longer than average, ORS 135.748(1)(c) categorically tolls the statutory speedy-trial clock when a defendant fails to appear at a scheduled court appearance. That is, the exclusion applies regardless of the circumstances surrounding a defendant's failure to appear. The legislature, of course, is free to amend the statutory speedy-trial framework if it determines that the current framework inadequately balances the various interests at stake including defendants, the public, victims, and witnesses in prompt adjudication of criminal charges. *See* ORS 174.010 ("[T]he office of the judge is simply to ascertain and declare what is, in terms or in substance, contained [in the construction of a statute], not to insert what has been omitted[.]").

Accordingly, because the text, context, and legislative history of ORS 135.748(1)(c) does not reveal that the legislature intended to require a voluntary act, the trial court did not err in rejecting defendant's statutory speedy-trial claim.

Affirmed.